AMERICAN FABRICARE t/a Laundry Wearhouse, Plaintiff,

v.

TOWNSHIP OF FALLS, Defendant.

No. CIV.A. 99–1650.

United States District Court, E.D. Pennsylvania.

June 13, 2000.

## MEMORANDUM

LOWELL A. REED, Jr., Senior
District Judge.

This action arises out of the efforts of plaintiff American Fabricare to move its laundromat facilities into a new shopping center in the Township of Falls, Pennsylvania ("Township"). In September 1998, plaintiff signed a lease agreement for store space in a shopping center with the intention of preparing the space and opening for business by early 1999. In October 1998, Township officials informed plaintiff that the necessary permits for construction and occupancy would not issue until plaintiff paid additional sewer tapping fees, which were assessed because of the high rate of wastewater discharge that plaintiff's laundromat would generate. Plaintiff paid the fees under protest, and opened for business.

Plaintiff contends that the extraction of additional fees violated its rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment, and violated Pennsylvania law. The parties have filed cross-motions for summary judgment (Documents No. 11 and 12). For the following reasons, plaintiff's motion will be denied and defendant's motion will be granted.

In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250, 106 S.Ct. at 2515. On a motion for summary judgment, the facts should be reviewed in the light most favorable to the non-moving party. *See Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 146 (3d Cir.1993).

When opposing parties file cross-motions for summary judgment, the court must consider each motion separately, and "each side must still establish a lack of genuine issues of material fact and that it

is entitled to judgment as a matter of law." *United States ex rel. Showell v. Philadelphia AFL–CIO Hospital Ass'n,* No. 98–1916, 2000 WL 424274, 2000 U.S. Dist. LEXIS 4960, at *4 (E.D.Pa. Apr. 18, 2000) (quoting *Nolen v. Paul Revere Life Ins. Co.,* 32 F.Supp.2d 211, 213 (E.D.Pa.1998) (citing *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968))).

### State Law Claims

I begin with plaintiff's state-law claims, as Pennsylvania law provides a context that will inform my consideration of all the issues in this case. Plaintiff asserts that the sewer tapping fees charged to it by the Township violated state law. "The burden is on the challenging party to prove that the Authority abused its discretion by establishing a rate system which was either unreasonable or lacking in uniformity." *Smith v. Athens Township Auth.,* 685 A.2d 651, 655 (1996).

Upon a careful review of the law and the facts, I conclude that the neither the Township's establishment sewer tapping fees nor the assessment of such fees to plaintiff violated the law of Pennsylvania. To the contrary, the Township's sewer tapping fees were authorized by and consistent with Pennsylvania law.

The sewer tapping fees charged by the Township at the time relevant to this case were established by Township of Falls Authority Resolutions 95–1 and 95–6. (Defendant's Exh. L and K, respectively). The resolutions were passed by the Township of Falls Authority pursuant to the Municipal Authorities Act, 53 Pa.S.A. § 306, which allows municipal authorities to exist for the purpose of operating, among other things, "sewers and sewer systems or parts thereof." 53 Pa.S.A. § 306(A)(a). According to the Act, municipal authorities are authorized to

fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, and ... the payment of principal and interest on its obligations.

53 Pa.C.S.A. § 306(B)(h). Municipal authorities also are authorized under the statute "[t]o charge certain enumerated fees to property owners who desire to or are required to connect to the Authority's sewer or water system." 53 Pa.C.S.A. § 306(B)(t).

The Act delves into great detail in addressing the circumstances in which sewer tapping fees are appropriate. According to the Act, tapping fees "shall not exceed an amount based upon some or all of the following fee components:" (1) capacity; (2) distribution or collection; (3) special purpose; and (4) reimbursement part. *See* 53 Pa.S.A. § 306(B)(t). The Act describes what may and may not be included in each component and how tapping fees should be calculated, *see id.,* and directs municipal authorities to "have available for public inspection a detailed itemization of all calculations clearly showing the manner in which the fees were determined." 53 Pa.S.A. § 306(B)(t)(2).[1]

■ I conclude that Resolutions 95–1 and 95–6 adhered to these requirements.

---

1. Following the passage of Resolution 95–6, management of the Township's sewer system was turned over to the Township itself, and came under the purview of the Township's board of supervisors. (Dillon Deposition, at 8, Defendant's Exh. O). At the time of the turnover, the Township adopted the resolutions of the authority, including Resolutions 95–1 and 95–6, so that they remained in effect following the turnover. (Memorandum from James J. Dillon, Township Manager, Feb. 21, 1997, Defendant's Exh. L). The Township of Falls is governed by the Second Class Township Code, 53 Pa.S.A. § 65101, *et seq.,* which authorizes the board of supervisors to "impose and charge to property owners who desire to or are required to connect to the township's sewer system a connection fee, a customer facilities fee, a tapping fee, and other similar fees, as enumerated and defined by ... the Municipal Authorities Act of 1945." 53 Pa.S.A. § 67505. Because I have determined that there is no genuine issue of material fact as to whether the Township's tapping

Both resolutions set forth the separate capacity and collection components of the tapping fees in compliance with the Municipal Authorities Act. Resolution 95–1 referenced the calculations required by the Act for establishing the different components for tapping fees, represented that such calculations were performed, and attached copies of the calculations. (Township of Falls Resolution 95–1, Defendant's Exh. L).[2] Plaintiff does not take issue with the calculations performed by the Township, nor does it claim that the Township erroneously interpreted the tapping fee requirements of § 306(B)(t).[3] Rather, plaintiff appears to challenge the authority of the Township to enact tapping fees. However, plaintiff points to no evidence that Resolutions 95–1 and 95–6 were not an legitimate exercise of the authority granted to municipal authorities under 53 Pa. S.A. § 306, and each resolution, on its face, complied with § 306(B)(t). There is, therefore, no genuine issue of material fact as to whether the resolutions were authorized by Pennsylvania law.

■ Nor is there evidence that the Township's resolutions were unfairly or irrationally applied in contravention of state law. Under the resolutions in this case, the owner of a property was assessed a sewer tapping fee of $1,533.33 [4]

per equivalent dwelling unit (EDU) of likely discharge. (Township of Falls Resolution 95–1, Defendant's Exh. L; Township of Falls Resolution, Defendant's Exh. K).[5] Typically, houses and apartments and average-use retail stores were assessed a fee in the amount of one EDU. (*Id.*). In plaintiff's case, Township authorities determined, based on water-use figures submitted by plaintiff, that plaintiff's laundromat would generate 19 EDUs of discharge. (Deposition of James J. Dillon, Township Manager, Defendant's Exh. O, at 29–30). Consequently, Township officials notified plaintiff that because the store space had been credited only one EDU, plaintiff was required to pay sewer tapping fees for the 18 additional EDUs, for a total of $27,599.94, before a construction permit or certificate of occupancy would issue. (Letter of Wayne Bergman, Oct. 28, 1998, Defendant's Exh. J).

There is nothing on the record to suggest that the Township applied the fees to plaintiff in manner inconsistent with the Municipal Authorities Act or in arbitrary or capricious manner. The evidence shows that plaintiff was merely assessed the very sewer tapping fees required by legitimate Township resolutions, which were, in turn, authorized by state law. A reasonable jury could not find otherwise. Therefore,

fees complied with the Municipal Authorities Act, I conclude as a matter of law that the Township did not violate the Second Class Township Code by adopting and continuing to enforce the tapping fees set forth in Resolutions 95–1 and 95–6.

2. Resolution 95–1 references calculations made in 1991 and 1992, and new calculations and supporting documents that apparently were attached to the original resolution. (Township of Falls Resolution No. 95–1, at ¶ 13, Defendant's Exh. L). While the new calculations and support documents are not included in the record before this Court, the resolution language stating the rational basis for the fee amounts is persuasive, and plaintiff offers nothing to counter it.

3. For a case addressing a plaintiff's claim that a township's tapping fees did not comply with the requirements set forth in § 306(B)(t), see *West v. Hampton Township Sanitary Auth.*,

661 A.2d 459 (1995). Plaintiff did not mount the kind of challenge discussed in *West* (in which plaintiff challenged the inclusion of particular costs in the township's calculations of tapping fee amounts), and therefore *West* is helpful to this case only insofar as it illuminates the requirements of § 306(B)(t), with which I conclude the Township complied.

4. The components of the sewer tapping fee were $710.83 per EDU for capacity-related expenses, and $822.50 for collection-related expenses.

5. The resolution established the amount of one EDU as 350 gallons, the average amount produced by a single-family home. (Township of Falls Authority Resolution 95–6, at Exh. A1, Defendant's Exhibit K; Dillon Deposition, at 16–17, Defendant's Exh. O).

I conclude as a matter of law that the Township did not violate Pennsylvania law by passing Resolutions 95–1 and 95–6 and enforcing them with respect to plaintiff's laundromat.[6] Therefore defendant's motion for summary judgment as to plaintiff's state municipal law claims will be granted.

It is also clear from the foregoing discussion that defendant has produced ample evidence from which a reasonable jury could find that the Township did not violate Pennsylvania law by adopting Resolutions 95–1 and 95–6, or by enforcing them against plaintiff. Therefore, plaintiff's motion for summary judgment will be denied as to its state law claim.

### Constitutional Claims

To sustain a constitutional claim under 42 U.S.C. § 1983, plaintiff must show that (1) the defendant acted under color of law; and (2) defendant's actions plaintiff deprived of rights secured by the Constitution or federal statutes. *See Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir.1993), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

Section 1983 does not create any substantive rights, but it provides a procedural mechanism by which plaintiffs can recover for violations of constitutional rights. *See Smith v. Holtz*, 210 F.3d 186, 195–96 (3d Cir.2000) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)). The substantive rights at issue here are plaintiff's constitutional rights to equal protection and substantive due process.[7]

### 1. Equal Protection

▮▮▮ The Equal Protection Clause of the Fourteenth Amendment provides that

---

**6.** The tapping fees levied by the Township are not inconsistent with other Pennsylvania statutes related to sewer systems.

The Pennsylvania Sewage Facilities Act has no effect on the resolutions at issue in this case. The Act governs certain aspects of the provision of sewage services by municipalities by requiring municipalities to develop and submit to the state Department of Environmental Resources official plans for sewage services within their jurisdictions. *See* 53 Pa. C.S.A. § 750.5. The official plans are essentially capital plans for sewage systems that assess the current state of and future demands on the systems, and make recommendations concerning the repair, maintenance, and construction of sewage facilities. The Act makes no reference to fees charged by Townships for sewage services, and nothing in the Act limits the power of municipalities, granted in the Municipal Authorities Act and Second Class Township Code, to levy such fees. The official plan of the Township submitted pursuant to the Sewage Facilities Act contains no mention of tapping fees, and does not prohibit the charging of tapping fees in the manner set forth in Resolutions 95–1 and 95–6. The Sewage Facilities Act simply does not govern the charging of fees or rates for sewer usage.

Nor is there is anything in the general Pennsylvania law governing sewers, 53 Pa. S.A. § 2201, *et seq.*, to suggest that the Township's sewer tapping fees were unlawful. Section 2231, which governs "Rentals for the use of sewage system[s]," provides that townships may impose on property owners an "annual rental, rate or charge for the use of such sewer." Section 2232 delineates the purposes for which such rents may be charged, which include the payment of operation, maintenance costs, and other sewer-related expenses, and debt satisfaction. It is unclear whether the tapping fees at issue in this case constitute sewer "rentals," but assuming *arguendo* that they do, there is no genuine issue of material fact as to whether the fees complied with the requisites of §§ 2231 and 2232. Resolution 95–1 states that the Township conducted the detailed assessment of the system needs and the technical calculations required by the Municipal Authorities Act, and Resolution 95–6 states that the fees were used to support the financial obligations of the Authority, which, at that time, was solely responsible for the Township's water and sewer systems. Thus, there is ample evidence on the record that the fees were directly related to permissible purposes for which sewer rentals may be charged under § 2232, and plaintiff points to no evidence that the sewer tapping fees were charged for or used for any purpose inconsistent with those set forth in § 2232.

**7.** Corporations are "persons" within the meaning of § 1983, and can bring suit for violations of their rights. *See Regency Catering Services, Inc. v. City of Wilkes–Barre*, 640 F.Supp. 29, 30 (M.D.Pa.1985) (citing *Watchtower Bible & Tract Soc'y, Inc. v. Los Angeles County, et al.*, 181 F.2d 739 (9th Cir.1950);

no State shall "deny to any person within its jurisdiction the equal protection of the laws." This provision embodies the general rule that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *see also Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834 (1997) (citations omitted). A statute that does not impinge on a fundamental right or a burden a suspect class of persons, "is accorded a strong presumption of validity," *Heller v. Doe*, 509 U.S. 312, 319–20, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993) (citations omitted), and a plaintiff will not prevail so long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 320, 113 S.Ct. at 2642. In the context of social and economic regulation, the Supreme Court has noted,

> [C]ourts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. The Constitution presumes that absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that the judicial intervention is generally unwarranted.

*Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979).

■ I conclude that the record could not support a finding by a reasonable trier of fact that there was no rational basis for the sewer tapping fees assessed to plaintiff. As discussed above, the record demonstrates that the amount of the tapping fees was set according to the detailed assessment of sewage system needs and technical calculations required by Pennsylvania's Second Class Twp. Code, 53 Pa. S.A. §§ 65101, *et seq. The Act essentially requires municipalities to assess tapping fees that are rationally related to the needs of the sewage system.* Resolution 95–1 specifically invokes the Municipal Authorities Act, cites the increased costs related to the components described in the Act, and attaches calculations required by the Act. Plaintiff offers no evidence to rebut the rational basis of the fees or their relationship to the. Township's legitimate interest in maintaining the physical and fiscal integrity of its sewer system. Thus, there is no genuine issue of material fact as to whether the fees were rationally related to a legitimate governmental interest.

Furthermore, the record contains no evidence that the fees were unfairly assessed. According to Resolutions 95–1 and 95–6, the amount of sewer tapping fees was based on a fixed fee per unit of discharge that was applied to "all its customers." (Township of Falls Authority Resolution 95–6, Defendant's Exh. K). Plaintiff has brought forward no evidence of another laundromat being treated differently with respect to sewer tapping fees, offered no examples of other high-discharge businesses in the Township that were not required to pay additional sewer tapping fees based on increased use, and produced nothing to indicate that the Township applied the EDU-based calculus to the plaintiff American Fabricare in an arbitrary manner.[8] Fundamentally, it is rational

---

*Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir.1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979)).

8. Plaintiff attaches as an exhibit a letter from the Municipal Authority of the Borough of Morrisville, which runs the wastewater treatment plant that processes the wastewater from plaintiff American Fabricare. (Letter from George R. Mount III, Executive Director, Municipal Authority of the Borough of Morrisville, Oct. 19, 1998, Plaintiff's Exh. EE). The letter states that the waste water treatment plant "has sufficient capacity to service the above reference project." (*Id.*). However, the letter does not state that the additional EDUs of wastewater produced by plaintiff would have no effect on the sewage system as a whole, nor does it say that additional wastewater would have no impact on the wastewater treatment plant. Thus, the letter does not create a genuine issue of material fact as to whether the sewer tapping fees

and reasonable for the Township to charge fees to users of its sewage system based on the level of discharge generated by those users. No inference can be drawn from this record other than that the monies generated by the fees relate directly to the Township's legitimate interest in ensuring the physical and financial integrity of the sewer system.

were related to a need within the sewer system.

Furthermore, a letter from engineering consultants to the Township notes that the additional flow from plaintiff's laundromat could cause damage to the sewer lines, and recommends that the Township obtain indemnity assurances from plaintiff. (Letter from Kanti Patel, Unitech Engineers, Inc., Oct. 16, 1998, Defendant's Exh. I). This evidence supports defendant's contention that the charging of sewer tapping fees was rationally related to a legitimate governmental purpose. Thus, plaintiff has not produced sufficient evidence to create a genuine issue of material fact as to whether there was a direct financial justification for the additional sewer tapping fees.

9. There are no inconsistencies between the Township's official sewer facilities plan and the charging of sewer tapping fees based on the number of EDUs produced by a user. As noted above, *supra,* at note 6, neither the official plan nor the law requiring it includes anything about sewer tapping fees. To the extent that the plan is at all relevant to the issue of sewer tapping fees, it provides a justification for the fees. The Township's plan identified problems with the sewage system, recommended maintenance and improvements based on population growth and a consequent rise in demand for sewage service, and estimated the costs of such projects. (Township Falls Authority, Bucks County, Pennsylvania, Comprehensive Sewerage Study, July 1990, Plaintiff's Exh. W, at 70, 75–77). Sewer tapping fees based on the amount of discharge are a rational means to raise funds for such needed maintenance, and, as discussed above, such fees are specifically authorized by the Municipal Authorities Act.

10. There was nothing irrational about the Township's decision to charge American Fabricare for units of discharge in addition to those already paid for by the owner of the shopping center. The shopping center owner had paid the Township sewer tapping fees for a total of five EDUs; one EDU per storefront. (Witt Deposition, at 43, Defendant's Exh. AA). Under an agreement with the Township, the

Plaintiff argues that the levying of additional sewer tapping fees against it was irrational and arbitrary because the fees were (1) not based on the official sewer facilities plan;[9] (2) in excess of those charged when the shopping center was built;[10] (3) inconsistent with the sewage planning modules approved by the board;[11] and (4) unrelated to any need to

shopping center owner agreed abide by all applicable rules and regulations adopted by the Township, and promised to pay the Township "tapping fees in such sums as the Township shall set and shall be in existence at the time that the [owner] is ready to connect to the Township's sewer facilities." (Agreement to Supply Sewer Services, Feb. 6, 1997, Defendant's Exh. A). At the time the owner paid those fees, the Township was informed that the tenant in the store eventually occupied by plaintiff would be a hardware store, which Township officials "perceived as a very benign use of water." (Deposition of Wayne Bergman, Chief Code Enforcement Officer, Township of Falls, Defendant's Exh. F, at 16). When the Township later discovered that the occupant of the store had changed from a low-discharge hardware store to plaintiff's high-discharge laundromat, the Township sought information from plaintiff and adjusted the sewer tapping fees to account for the higher use reflected in plaintiff's submissions. (Dillon Deposition, Defendant's Exh. O, at 32). That action was authorized by Resolution 95–6, which provides, "All connections other than residential will be subject to audit after they are in use. If the actual EDU's exceed the amount originally applied for, the owner will be invoiced for the additional tapping fees." (Township of Falls Authority Resolution 95–6, Defendant's Exh. K).

11. Because there is no evidence that this contention is supported by the record, the charge of additional sewer tapping fees did not violate the shopping center's sewage facilities planning module. The sewage facilities planning module places no limitations on additional sewer tapping fees. In fact, the module illustrates the rationality of the Township's decision to charge plaintiff additional tapping fees. Included in the module was a project narrative drafted by the owner of the shopping center, which said, "Each store and the restaurant is expected to generate 400 GPD (1 EDU) for every public toilet." (Sewage Facilities Planning Module, Project Narrative, Plaintiff's Exh. X). The module was based on a prior estimate of six total EDUs for all the

expand or maintain facilities;[12] and (5) not rebated when a high-volume user of a particular property was replaced by a lower-volume user.[13] None of these arguments demonstrates that the sewer tapping fee structure or the decision to extract additional sewer tapping fees from plaintiff American Fabricare was irrational.

In three similar district court cases, equal protection claims similar to plaintiff's have failed. *See General Textile Printing & Processing Corp. v. City of Rocky Mount,* 908 F.Supp. 1295, 1309–10 (E.D.N.C.1995) (no equal protection violation where plaintiffs were forced to pay more for the same amount of sewage discharge than other users as part of a municipal effort encourage large quantity users to reduce their sewage output, even though city made a profit on its sewage services and used that money for purposes unrelated to the sewer system); *Kontokosta v. Village of Greenport,* No. 87–3432, 1991 WL 206296, *8, 1991 U.S. Dist. LEXIS 13598, at *23 (S.D.N.Y Sept. 27, 1991) (Equal Protection Clause not violated

stores, and did not account for plaintiff's additional 18 EDUs of discharge. The decision of Township authorities to charge additional tapping fees based in the subsequent discovery of a much higher expected discharge by plaintiff was rational in light of the drastic difference between the sewage use contemplated in the planning module and the sewage use projected by plaintiff.

12. Plaintiff has not established that the additional fees were not related to a need to expand or maintain the sewer system in a manner sufficient to allow a reasonably jury to so find. The resolutions governing the levying of sewer tapping fees on a per-EDU basis referred to increases in sewer-related demand and debt (Township of Falls Authority Resolution 95–1, Defendant's Exh. L), and provided that the fees were established "for the purposes of meeting financial obligations of the Authority." (Township of Falls Authority Resolution 95–6, Defendant's Exh. K). The Municipal Authorities Act, 53 Pa.S.A. § 306(B)(t), requires tapping fees to be calculated based on specific criteria related to the sewage system's capacity, distribution, and collection, and, as noted above, I conclude that a reasonable jury would have no choice but to conclude from this record that the Township complied with these requirements and based its fees on the sewage system's specific needs. Plaintiff offers no evidence to suggest that anything other than the needs of the sewage system were the basis for the Township's decision to seek sewer tapping fees based on plaintiff's high level of sewage discharge.

13. Plaintiff places great reliance on what it considers to be the logical fallacy of the Township's sewer tapping fees. Plaintiff makes an analogy to the residential setting, arguing that because additional sewer tapping fees are not charged to a family with ten children when they succeed a bachelor as the owner of a home, a high-discharge commercial user should not be charged additional tapping fees when it replaces a low-discharge user. Plaintiff's residential analogy is logically inapposite, because Resolution 95–6 draws a distinction between residential and commercial users, consistently establishing a general fee of one EDU per residential unit for all such units, and charging commercial users based on a per-EDU basis. (Township of Falls Authority Resolution 95–6, Exh. A1, Defendant's Exh. K). I conclude that there is nothing irrational about such a distinction.

Plaintiff's alternate logical attack is that the Township' tapping fee regime is irrational because it does not rebate tapping fees when a low-discharge business replaces a high-discharge business. This argument presumes that the sewer tapping fees are merely security deposits intended to cover direct costs related to users' actual use of the sewer system, and returned at some point as long as the user has caused no damage to the system. There is nothing in the record to support such a characterization. According to Pennsylvania law, sewer tapping fees are up-front, one-time fees charged to every commercial property that undergoes a change in use, and their purpose is to help the Township meet the financial obligations of the sewer system with respect to managing capacity, distribution, and collection. *See* 53 Pa.S.A. § 306(B)(t). The Township could have rationally concluded that the fees were necessary to pay for the capacity, distribution, and collection components of sewer service on the basis of how much discharge a user produces. The fact that a lower discharge user assumes control of the property at a later date is irrelevant to the capacity, distribution, and collection needs created by the high-discharge user during the time the high-discharge user owns the property. Thus, I conclude that plaintiff's logic has no compelling force and does not carry the day, since a fact finder could not find that the Township's plan was irrational.

where new sewer users were subjected to higher tap-in rates than prior users and individuals inside the boundaries of the village, because the new fees were authorized by a resolution "based on a documented demand for water and sewage service outside the Village, which created the need for new facilities"); *South Shell Inv. v. Town of Wrightsville Beach,* 703 F.Supp. 1192, 1201–02 (E.D.N.C.1988) (system impact and tapping fees for water and sewer did not violate the Equal Protection Clause because the city "reasonably may have decided that the anticipated development ... necessitated expansion and improvements to the water and sewer systems," and plaintiff produced no evidence that the amount of the increase of either the tap fees or the impact fees was appropriate). While not binding on this Court, these holdings, based on facts far more compelling than the instant case, support this Court's determination that no equal protection violation has taken place here.

The record contains no evidence that the decision to impose additional fees based on plaintiff's high-volume wastewater discharge was arbitrary, motivated by ill will, or related to anything but a legitimate purpose. The undisputed factual record in this case demonstrates that the decision to impose sewer tapping fees on plaintiff was consistent with state law and was rationally related to maintaining the fiscal integrity of the sewer system. For the foregoing reasons, I conclude that there is no genuine issue of material fact as to equal pro-

tection, and defendant is entitled to judgment as a matter of law on that claim.[14]

My analysis also leads me to the conclusion that plaintiff is not entitled to judgment as a matter of law. Plaintiff has pointed to no absence of a genuine issue of material fact as to whether there was a rational basis for the assessment of fees by the Township; to the contrary, the facts overwhelming establish the rationality of the assessment. I conclude that a reasonable trier of fact could find that the Township's sewer tapping fees had a rational basis, and thus plaintiff's motion for summary judgment will be denied on its equal protection claim.

### 2. Substantive Due Process

■ Plaintiff also mounts a substantive challenge to the Township's sewer tapping fees under the Due Process Clause of the Fourteenth Amendment. Substantive due process cases related to land-use regulations and permits display a tension between the reluctance of federal courts to sit as appeals boards for disputes between developers and townships and the due process right of developers to be free from "arbitrary and irrational" municipal regulations. *See Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 122 (3d Cir. 2000) (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). At issue in such cases is a property interest in the use of the land, and to prevail, a plaintiff must show that that interest was burdened by "governmental action that was arbitrary,

14. Plaintiff suggested in a letter to the Court that a recent Supreme Court decision, *Village of Willowbrook v. Olech,* —— U.S. ——, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), supports plaintiff equal protection claim. I conclude that it does not. *Willowbrook* involved an equal protection challenge to a village's requirement that plaintiff grant the city a 33–foot easement as a condition to connecting plaintiff's property to the city's water supply, when the village required only a 15–foot easement of other property owners. Reviewing the district court's dismissal for failure to state a claim, the Court merely held that the complaint had stated a cognizable equal protection claim by alleging that the city's requirement was irrational and wholly arbitrary, particularly in light of the allegations that plaintiffs were treated differently than other similarly situated individuals. *See id.* at 1074. Unlike *Willowbrook,* this case is at the summary judgment stage, and to survive summary judgment plaintiff must do more than merely state an equal protection claim; it must produce evidence to support its claims of disparate treatment. Plaintiff has not done so. Thus, *Willowbrook* has no effect on the outcome of my decision today.

irrational, or tainted by improper motive." *See Woodwind*, 205 F.3d at 124 (quoting *Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988)). A government decision that was made for "reasons unrelated to the merits of the application for the permits," will be found to be an arbitrary or irrational abuse of power that violated the substantive rights of the plaintiff under the Due Process Clause. *See id; see also Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 590–91 (3d Cir.1998) (citations omitted); *Midnight Sessions, Ltd. v. Philadelphia*, 945 F.2d 667, 682–83 (3d Cir.1991) (citations omitted), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992); *Rogin v. Bensalem Township*, 616 F.2d 680, 689 (3d Cir.1980) (citations omitted), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

■ Plaintiff argues that Township officials violated its substantive due process rights by refusing, without authority, to issue the necessary permits until additional sewer tapping fees were paid, in spite of the approval of a sewage facilities planning module for the shopping center by the Township's board of supervisors. As noted above, *see supra* note 11, the sewage facilities planning module was premised on the incorrect assumption that only 6 EDUs of waste water would flow from the entire shopping center; a mere one-third of what than plaintiff's laundromat alone would produce. Thus, it was entirely rational for the Township to revisit the tapping fees assessed to the property when it became apparent that plaintiff's business would increase the sewage output of the entire shopping center threefold. In fact, it would have been irrational for the Town-

ship not to assess additional sewage tapping fees for a user that dramatically increased the sewage flow.

Plaintiff does not address Resolutions 95–1 and 95–6, which explicitly and rationally granted Township officials the authority to levy sewer tapping fees on a per-EDU basis, audit the wastewater flow of all businesses, and demand additional sewer tapping fees beyond the amount originally paid. (Township of Falls Resolution 95–6, Defendant's Exh. K; Township of Falls Resolution 95–1, Defendant's Exh. L). As discussed above, the fees were authorized by the Municipal Authorities Act and Township resolutions, and there is no evidence on the record to indicate that the decision to charge plaintiff tapping fees was made for reasons unrelated to the merits of the application.[15] Rather, the record shows that the decision was completely consistent with the Township resolution authorizing the charging of sewer tapping fees. The only support for plaintiff's due process claim is its own conclusory allegation and belief that the Township's fees were onerous and unfair. This is not enough to withstand a summary judgment on the substantive due process claim. Because plaintiff has not established any genuine issue of material fact on this issue, defendant's motion will be granted as to the plaintiff's claim under the Due Process Clause. I also conclude that defendant has produced sufficient evidence to convince a reasonable jury that it did not violate plaintiff's substantive due process rights. For that reason, plaintiff's motion for summary judgment on its substantive due process claim will be denied.

For the foregoing reasons, plaintiff's motion for summary judgment will be de-

---

**15.** There is evidence that the Township's attention was drawn to plaintiff by a business competitor who filed complaints with Township officials concerning alleged unauthorized construction by plaintiff and sewage fees. (Complaint/Request for Information Form, Nov. 17, 1998, Dec. 30, 1998, Defendant's Exh. P and Q). However, there is no evidence that Township officials applied the law unevenly simply because of the complaints they received or colluded with the competitor for an improper purpose. The record shows that the Township officials simply applied existing law to plaintiff, and plaintiff points to no evidence to the contrary.

nied, and defendant's motion will be granted, as to all constitutional claims.