In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00010-CR

                                                ______________________________

 

 

                                   DARNELL HARTSFIELD,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the Fourth
Judicial District Court

                                                              Rusk County, Texas

                                                         Trial Court
No. CR05-337

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

          A
jury convicted Darnell Hartsfield of five counts of capital murder; he was
sentenced to  punishment at life
imprisonment. Hartsfield appeals from his conviction and has filed a single
brief, in which he raises issues common to all of his appeals.[1]  He argues that the trial court committed
reversible error in that (1) the evidence supporting his conviction was legally
and factually insufficient and (2) admitting evidence of an extraneous offense.


          We
addressed these issues in detail in our opinion of this date in Hartsfield’s
appeal in cause number 06-09-00006-CR.  For
the reasons stated therein, we likewise conclude that error has not been shown
in this case.

          We affirm the trial court’s judgment.


 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:     October 21, 2009                

Date Decided:       February 4, 2010

 

Do Not Publish

 

 











[1]Defendant
appeals from five convictions, for capital murder, cause numbers 06-09-00006-CR
through 06-09-00010-CR. 








S.W.3d 274, 277 (Tex. App.-Amarillo 1999, pet. denied); 4M Linen
& Uniform Supply Co. v. W. P. Ballard & Co., 793 S.W.2d 320, 322 (Tex. App.-Houston
[1st Dist.] 1990, writ denied).

 Though we agree the elements of equitable estoppel must be present, we note the
equitable estoppel recognized in Rosenthal was based on the city's conduct. (7) The building
inspector classified the meat storage facility as a permissible nonconforming use, the city
did not appeal his decision, and the court estopped the city from later enforcing the
ordinance. Rosenthal II, 239 S.W.2d at 643; Rosenthal I, 211 S.W.2d at 291. One who
by his conduct has induced another to act in a particular manner should not be permitted
to adopt an inconsistent position and thereby cause loss or injury to the other. Fabrique,
Inc. v. Corman, 796 S.W.2d 790, 792 (Tex. App.-Dallas 1990), writ denied, 806 S.W.2d
801 (Tex. 1991) (per curiam); Mobil Oil Corp. v. Frederick, 615 S.W.2d 323, 325 (Tex. Civ.
App.-Fort Worth), aff'd in part & rev'd in part on other grounds, 621 S.W.2d 595 (Tex.
1981); see also 31 C.J.S. Estoppel and Waiver § 59 (1996). In equitable estoppel by
conduct, the fraud is the inconsistent position subsequently taken, rather than the original
conduct. 28 Am. Jur. 2d Estoppel and Waiver § 71 (2000).

 In the present case, we conclude the City failed to establish grounds for avoidance
of estoppel as a matter of law. Maguire presented sufficient summary judgment proof to
show the actions of city officials were authorized. We have already stated that the
language of Section 23-102 does not prohibit Maguire from drilling. (8) City officials issued
Maguire three drilling permits, and the City does not contend Maguire failed to fulfill the
formal requirements for obtaining these permits. Further, Alexander's affidavit asserts that
he is "a City official responsible for enforcing City ordinances in and around Lake Houston,"
that he issued the stop work order, and that he revoked the permit. Therefore, the City
failed to demonstrate, as a matter of law, its officials were not acting under the City's
authority.

 In addition, Maguire demonstrated this is the kind of case in which justice requires
application of estoppel. Maguire presented summary judgment proof that, after obtaining
the permits, it expended $190,000.00 preparing the drill site, including clearing a wooded
area, building a road, driving pipe, and reinforcing a bridge. 

 Also, estoppel would not interfere with the City's exercise of its governmental
functions. Though we have found no case applying the Texas Supreme Court's language
from Prasifka, dicta from Dallas County Flood Control Dist. No. 1 v. Cross, 815 S.W.2d
271, 284 (Tex. App.-Dallas 1991, writ denied), suggests estoppel would interfere with the
exercise of a city's governmental functions if it would erect a legal barrier to the city
carrying out its governmental functions in the future. On the other hand, estoppel would
not interfere with the exercise of a city's governmental functions if the landowner had been
using the land for some time without objection from the city. See Krause, 106 S.W. at 123
(landowner's house stood on property for over twenty years before city enforced boundary);
Rosenthal I, 211 S.W.2d 279 (landowner used property as meat storage facility for year
and a half before city sought to enforce zoning law). We do not suggest these are the only
factors a trial court could properly consider in making this determination.

 In the present case, Maguire sought damages associated with its expenditures to
prepare the drill site. Monetary damages would not prevent the City from operating Lake
Houston in the future or place the City's drinking water at risk. In fact, assuming Maguire's
well would threaten the City's drinking water, money damages are a superior remedy to
enforcement of the permit. However, even if Maguire had sought the removal of the City's
stop work order, summary judgment would still have been inappropriate, because Maguire
presented summary judgment proof of other wells that have been drilled within 1,000 feet
of Lake Houston.

 Finally, Maguire's summary judgment proof raises a fact issue concerning each
element of equitable estoppel. Maguire's summary judgment proof establishes that the
City issued Maguire three permits, that Maguire relied on the City's conduct in issuing the
permits by expending substantial funds, and that, later, city officials revoked the permit and
issued Maguire a stop work order. Therefore, the City failed to refute Maguire's estoppel
defense. Summary judgment was inappropriate on Maguire's claims for negligent
misrepresentation and promissory estoppel based on sovereign immunity.

 The City also contends that, notwithstanding the availability of sovereign immunity,
Maguire's negligent misrepresentation and promissory estoppel claims fail as a matter of
law. The elements of negligent misrepresentation are: (1) a defendant makes a
representation in the course of business or a transaction in which the defendant has a
pecuniary interest; (2) the defendant supplies "false information" for the guidance of others
in their business; (3) the defendant did not exercise reasonable care or competence in
obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by
justifiably relying on the representation. Fed. Land Bank Ass'n of Tyler v. Sloane, 825
S.W.2d 439, 442 (Tex. 1991); Facciolla v. Linbeck Constr. Corp., 968 S.W.2d 435, 442
(Tex. App.-Texarkana 1998, no pet.). The City contends any alleged misrepresentation
had to occur in the course of a business or pecuniary transaction and the issuance of a
drilling permit is not a business transaction.

 However, we have already concluded that the language of Section 23-102 does not
prohibit Maguire from drilling and that the City has not alleged Maguire failed to comply with
the formalities for obtaining a permit; therefore, the permit was valid. Summary judgment
was appropriate on Maguire's negligent misrepresentation claim.

 The elements of promissory estoppel include: (1) a promise; (2) foreseeability of
reliance by the promisor; and (3) substantial reliance by the promisee to his detriment. 
English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983). Maguire's promissory estoppel claim
is based on the permit, which it contended induced it to expend substantial funds to
prepare the site for drilling. The City contends a permit is not a promise.

 In Shelby Operating Co. v. City of Waskom, 964 S.W.2d 75, 80 (Tex.
App.-Texarkana 1997, pet. denied), this Court held, 

 If the ordinance requires that a drilling permit be obtained before a well is
commenced and also prescribes the conditions which must be met, the
granting of a permit is a ministerial act and is not discretionary. Accordingly,
if the provisions of the ordinance are met, the permit must be issued and
cannot be revoked,

 

citing 5 Eugene Kuntz, Oil and Gas § 68.3 (1991). See also Ex parte Mata, 925 S.W.2d
292, 295 (Tex. App.-Corpus Christi 1996, no writ) ("The granting of licenses and permits
are generally held to be privileges and not rights, although if one meets the criteria set in
order to obtain a permit or license, it may not be lawfully refused. It becomes a right."). 
Our language in Shelby regarding revocation of a permit must be limited when there is
language in the ordinance itself governing the terms of revocation or when city officials,
acting under the city's inherent police powers, determine drilling is endangering the public
health, morals, safety, or welfare. See Trevino & Gonzalez Co., 949 S.W.2d at 42, citing
Leach v. Coleman, 188 S.W.2d 220, 224-25 (Tex. Civ. App.-Austin 1945, writ ref'd w.o.m.),
and Tex. Transp. Code Ann. § 316.004 (Vernon 1999) (empowering cities to include "a
provision that authorizes the governing body, at its discretion, to terminate the permit
without notice to the permit holder" in an ordinance establishing permit program).

 The City cites the court's statement in Trevino that, "A building permit is simply a
revocable and alterable license authorizing construction." Trevino & Gonzalez Co., 949
S.W.2d at 42. That statement was made in the context of the court's holding that a permit
is not a contract. Id. However, promissory estoppel applies when a promise is not
enforceable in contract. 31 C.J.S. Estoppel and Waiver § 92 (1996).

 In the present case, the City issued Maguire three permits, which vested it with the
right to drill. That right was not revocable except under the terms of the ordinance or if city
officials determined Maguire's drilling was affecting the public health and safety. As such,
it was a promise to allow Maguire to drill under the terms of the governing ordinances so
long as its activities did not endanger the public welfare. There is no summary judgment
proof showing under what conditions a drilling permit may be revoked under the Houston
Code of Ordinances. There is also no summary judgment proof showing Maguire's
activities were a threat to the public welfare. In fact, Maguire's summary judgment proof
shows the existence of other wells located the same distance from Lake Houston as
Maguire's lease. Therefore, summary judgment was inappropriate on Maguire's
promissory estoppel claim.

Selective Enforcement Claim


 Maguire next contends the trial court erred by rendering a no-evidence summary
judgment against its selective enforcement claim. As a general rule, an ordinance is not
rendered either invalid or inoperative by the failure of officials to enforce it on other
occasions. (9) McVicker, 510 S.W.2d at 145; see also T & R Assocs. v. City of Amarillo, 688
S.W.2d 622, 630 (Tex. App.-Amarillo 1985, writ ref'd n.r.e.) ("The fact that a city official or
employee fails in certain particulars to enforce a zoning regulation cannot render it
invalid."). Maguire contends, however, Section 23-102 has been discriminatorily applied. (10) 

 The City contends that, because Maguire did not make a showing it was part of a
protected class, it cannot recover. The City's position is based on a series of decisions
culminating in State v. Malone Serv. Co., 829 S.W.2d 763 (Tex. 1992). In that case, the
Texas Supreme Court held that, to establish a claim of discriminatory enforcement, a party
must first show he or she has been singled out for prosecution or enforcement of the
regulation or ordinance while others similarly situated and committing the same acts have
not. Id. at 766; see also United States v. Rice, 659 F.2d 524, 526 (5th Cir. 1981); Wolf v.
State, 661 S.W.2d 765, 766 (Tex. App.-Fort Worth 1983, writ ref'd n.r.e.). Further, the
party must also show the government has purposefully discriminated on the basis of an
impermissible consideration such as race, religion, or the desire to prevent the exercise of
constitutional rights. Malone Serv. Co., 829 S.W.2d at 766; see Rice, 659 F.2d at 526;
Wolf, 661 S.W.2d at 766.

 Both Malone Service Company and Rice involved claims not raised by specially
protected groups. Malone Service Company involved a claim by a hazardous waste
disposal plant operator about enforcement of an environmental regulation, Malone Serv.
Co., 829 S.W.2d at 765; Rice involved a claim the Internal Revenue Service was
selectively enforcing the tax code against a group of tax protesters because of their
exercise of their right to protest. Rice, 659 F.2d at 526. Both the Texas Supreme Court
in Malone Service Company and the Fifth Circuit in Rice concluded the defendants failed
to show the government had an invidious motivation for enforcing the law (e.g., one based
on race, ethnicity, religion, gender, or the desire to prevent the exercise of constitutional
rights). Rice, 659 F.2d at 527; Malone Serv. Co., 829 S.W.2d at 767.

 The City contends Maguire has not shown it is in a protected group and, therefore,
it is not entitled to raise an equal protection argument. The United States Supreme Court
recently addressed a situation where a municipality refused to connect a water line to the
plaintiff's property unless the plaintiff granted it a thirty-three-foot easement, rather than the
fifteen-foot easement required of her neighbors. Vill. of Willowbrook v. Olech, 528 U.S.
562, 563, 120 S.Ct. 1073, 145 L.Ed.2d 1060, 1062 (2000). The Court, reiterating earlier
cases, recognized a cognizable equal protection claim brought by a "class of one," where
the plaintiff alleges that he or she has been intentionally treated differently from others
similarly situated and that there is no rational basis for the difference in treatment. Id., 528
U.S. at 564, citing Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38
S.Ct. 495, 62 L.Ed. 1154, 1155-56 (1918). In Sunday Lake Iron, the Court wrote:

 The purpose of the equal protection clause of the Fourteenth
Amendment is to secure every person within the State's jurisdiction against
intentional and arbitrary discrimination, whether occasioned by express terms
of a statute or by its improper execution through duly constituted agents . . . .
It is also clear that mere errors of judgment by officials will not support a
claim of discrimination. There must be something more - something which
in effect amounts to an intentional violation of the essential principle of
practical uniformity. The good faith of such officers and the validity of their
actions are presumed; when assailed, the burden of proof is upon the
complaining party.


Sunday Lake Iron Co., 247 U.S. at 352-53 (citation omitted).

 Olech teaches that a party may be able to maintain an equal protection claim, even
though he or she does not belong to a protected class. At a summary judgment hearing,
a party must present some evidence that he or she was intentionally treated differently than
others who are similarly situated and that there is no rational basis for the differential
treatment. See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 500 (2d Cir. 2001);
Am. Fabricare v. Township of Falls, 101 F.Supp.2d 301, 309 n.14 (E.D. Pa. 2000).

 After Olech, the federal courts have grappled with the role of the defendant's motive
in "class of one" equal protection cases. In Hilton v. City of Wheeling, 209 F.3d 1005, 1008
(7th Cir. 2000), the Seventh Circuit stated "the role of motive is left unclear" in Olech and
held the United States Supreme Court's requirement the plaintiff prove there is no rational
basis for the differential treatment means the plaintiff must demonstrate "the defendant
deliberately sought to deprive [the plaintiff] of the equal protection of the laws for reasons
of a personal nature unrelated to the duties of the defendant's position." See also Bartell
v. Aurora Pub. Sch., 263 F.3d 1143, 1149 (10th Cir. 2001) (taking a similar position); Shipp
v. McMahon, 234 F.3d 907, 915 (5th Cir. 2000) (same). However, in Olech, the United
States Supreme Court held the plaintiff's complaint, which alleged the defendant
intentionally demanded an "irrational and wholly arbitrary" thirty-three-foot easement, but
later settled for a "clearly adequate" fifteen-foot easement, was sufficient to state a claim
for relief "quite apart from the Village's subjective motivation." Olech, 528 U.S. at 565.

 Regardless of whether a plaintiff must prove the differential treatment was motivated
by animus, we conclude Maguire presented sufficient summary judgment proof to raise a
fact issue on its equal protection claim. Maguire offered the affidavit of James D. Wilson,
who stated he reviewed topographical maps of the area and Texas Railroad Commission
documents and discovered twenty-one wells "drilled after 1967, inside the city limits of
Houston, and within 1000 feet of Lake Houston's drains, streams or tributaries." He also
stated he was able to visually confirm the location of six of these wells. Of the twenty-one
wells, all but four are operated by a single company. 

 This proof, though admittedly circumstantial, is sufficient to raise a fact question
concerning whether the City intentionally enforced Section 23-102 against Maguire
differently than against other companies. Further, because the other wells are similarly
situated to the one Maguire sought to drill, the summary judgment proof is sufficient to
raise a fact issue concerning whether the City had a rational basis for enforcing Section
23-102 differently. Finally, assuming Maguire is required to prove the City acted with
animus, the summary judgment proof is sufficient to raise a fact issue because the proof
shows the differential enforcement disproportionately favors a single company. Therefore,
summary judgment was inappropriate on Maguire's selective enforcement cause of action.

Conclusion


 Summary judgment was appropriate on Maguire's negligent misrepresentation
claim. However, summary judgment was inappropriate on Maguire's inverse condemnation
claim, its claim for reliance damages based on promissory estoppel, and its selective
enforcement claim. Therefore, we affirm the trial court's judgment in part, reverse in part,
and remand for further proceedings.



 Donald R. Ross

 Justice


Date Submitted: August 28, 2002

Date Decided: February 15, 2002


Publish

1. A full list of plaintiffs is as follows: (1) Maguire Oil Company; (2) Maguire Energy
Company; (3) Cary M. Maguire, individually; (4) Cary M. Maguire as manager for the Oil
Fund, a Texas joint venture; (5) Cary M. Maguire as trustee of the Cary M. Maguire, Jr.,
Melinda Ambler Maguire, and Ann Blaine Maguire trusts; (6) Don R. Holloway as custodian
of property for W. Matthew Holloway, Barbara Ann Holloway, and Tillman R. Holloway
under the Texas Uniform Transfers to Minors Act (TUTTMA), see Tex. Prop. Code Ann.
§§ 141.001-.025 (Vernon Supp. 2002); and (7) William N. Collins as custodian of property
for L. Paige Collins, Hattie S. Collins, and Chandler Collins under the TUTTMA. Each of
the plaintiffs (except Cary M. Maguire as trustee) is either a working interest holder in, or
a royalty owner and lessor of, one or more of the oil, gas, and mineral leases the subject
of this suit. 
2. The Texas Local Government Code defines extraterritorial jurisdiction as the
unincorporated area that is contiguous to the corporate boundaries of the city and that is
located within five miles of those boundaries if the city has 100,000 or more inhabitants. 
Tex. Loc. Gov't Code Ann. § 42.021(5) (Vernon 1999).
3. Maguire abandoned its discrimination claim at the hearing on the City's second
motion for summary judgment.
4. There is no specific statute of limitations for an inverse condemnation claim. 
However, courts have held the ten-year statute of limitations to acquire land by adverse
possession applies. Trail Enters., Inc. v. City of Houston, 957 S.W.2d 625, 631 (Tex.
App.-Houston [14th Dist.] 1997, pet. denied); see also Tex. Civ. Prac. & Rem. Code Ann.
§ 16.026(a) (Vernon Supp. 2002); Brazos River Auth. v. City of Graham, 163 Tex. 167, 354
S.W.2d 99, 110 (1961); Waddy v. City of Houston, 834 S.W.2d 97, 102 (Tex.
App.-Houston [1st Dist.] 1992, writ denied); Hudson v. Arkansas Louisiana Gas Co., 626
S.W.2d 561, 563 (Tex. App.-Texarkana 1981, writ ref'd n.r.e.); Hubler v. City of Corpus
Christi, 564 S.W.2d 816, 823 (Tex. Civ. App.-Corpus Christi 1978, writ ref'd n.r.e.).
5. Maguire also relies on dicta from Haupt, Inc. v. Tarrant County Water Control &
Improvement Dist. Number One, 833 S.W.2d 697, 699-700 (Tex. App.-Waco 1992), rev'd
on other grounds, 854 S.W.2d 909 (Tex. 1993), in which expert testimony was introduced
to establish the value of minerals in place on condemned land. However, Haupt does not
provide sufficient insight into the methods the expert witness used to value the minerals. 
For example, did the expert use sales of comparable mineral interests, a discounted cash
flow analysis of the revenues that could be earned from the minerals, or as Maguire
attempted to do in this case, sales of the reserves in the ground? In addition, Haupt dealt
with "proven" reserves from producing fields. Other cases we have reviewed suffer from
these same deficiencies. See Tarrant County Water Control & Improvement Dist. Number
One v. Fullwood, 963 S.W.2d 60, 61 (Tex. 1998) (Hecht, J., dissenting from denial of
application for writ of error) ("[T]he [trial] court awarded Fullwood $60,000 for what the jury
found to be the value of his royalty interest at the time the District plugged the wells, based
on the anticipated future economic productive life of the oil reserves."); Trinity River Auth.
v. Chain, 437 S.W.2d 887, 889 (Tex. Civ. App.-Beaumont 1969, writ ref'd n.r.e.) (where
jury was asked to determine "reasonable market value of the minerals under the 280.64
acres of land being condemned"); City of Teague v. Stiles, 263 S.W.2d 623, 628, 630 (Tex.
Civ. App.-Waco 1953, writ ref'd n.r.e.) (holding witness competent to testify "as to the
market value of the royalty under the land; that the value of the royalty under the lake
would be depreciated; and that the spacing rule of the Railroad Commission is one well per
40 acres").
6. In fact, Justice Looney dissented on rehearing and Chief Justice Bond concurred,
making the opinion on original submission the dissenting opinion and the dissenting
opinion on rehearing the majority opinion. See Rosenthal v. City of Dallas, 211 S.W.2d
279, 294-95 (Tex. Civ. App.-Dallas 1948, writ ref'd n.r.e.) (Bond, C.J., concurring on reh'g).
7. The estoppel doctrine applied in Rosenthal is also closely akin to quasi-estoppel,
which is a species of equitable estoppel and is itself an equitable doctrine. See Cook
Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 136 (Tex. App.-Houston
[14th Dist.] 2000, pet. dism'd); 31 C.J.S. Estoppel and Waiver § 120 (1996); see also 31
id. § 59 (1996) ("Insofar as conduct amounts to, and is considered as, a representation,
it is dealt with in this chapter together with other matters constituting representations; but
insofar as conduct inconsistent with a right subsequently asserted is viewed as a form of
quasi estoppel, it is dealt with in the chapter on quasi estoppel . . . ."). Compare 31 id.
§§ 58-119, with 31 id. §§ 120-152. Quasi-estoppel precludes a party from asserting, to
another's disadvantage, a right inconsistent with a position previously taken. Lopez v.
Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000). It applies when it
would be unconscionable to allow a person to maintain a position inconsistent with one to
which he acquiesced, or from which he accepted a benefit. Id. Unlike equitable estoppel
by conduct, however, quasi-estoppel requires no showing of a false representation or of
detrimental reliance. Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 548 (Tex.
App.-Austin 1999, pet. denied).
8. Arguably, Maguire could invoke estoppel even if Section 23-102 prohibited it from
drilling. Houston Code of Ordinances Section 31-30, which Maguire offered as summary
judgment proof, requires a building official to issue a permit if (1) the permit application is
found to comply with Houston Code of Ordinances Chapter 31, and (2) the well is not
prohibited by Chapter 31. Houston, Tex., Code of Ordinances § 31-30 (1990). Arguably,
Section 31-30 creates a fact issue concerning the authority of city officials to issue a permit
for drilling in a location prohibited by Section 23-102. However, we believe Section 31-30
must be read in conjunction with the restrictions on drilling in Section 23-102. From this
we conclude the City did not authorize city officials to issue a drilling permit for a site where
drilling would be prohibited under Section 23-102.
9. Eunice A. Eichelberger, Annotation: Enforcement of Zoning Regulation as Affected
by Other Violations, 4 A.L.R. 4th 462 (1981).
10. The concept of discriminatory enforcement is based on the constitutional
guarantee of equal protection under the law. State v. Malone Serv. Co., 829 S.W.2d 763,
766 (Tex. 1992). The defense originated in the context of criminal prosecutions, but courts
in this state have held the governing principles also apply to civil proceedings involving
state agencies. Id.