**MALONE SERVICE COMPANY, Arthur Lee Malone and Larry Malone, Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. A14–89–1132–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 10, 1991.

Rehearing Denied Feb. 7, 1991.

Thomas E. Bilek, Jacalyn D. Scott, Houston, for appellants.

Brian E. Berwick, Nancy E. Olinger, Austin, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

At the request of the Texas Water Commission (TWC), the attorney general's office brought this environmental enforce-

ment action against Malone Service Company (MSC), its president Arthur Malone, and plant manager Larry Malone, alleging groundwater contamination and unauthorized hazardous waste dumping into an earthen pit. Finding 418 violations of a permit that forbade use of the pit for hazardous waste disposal, a jury assessed MSC the maximum penalty of $5,000 per violation. In addition, the jury assessed a penalty of $627,000 against Arthur Malone for personally participating in or directing each violation. Larry Malone was assessed $22,000 for personally participating in or directing forty-four of the violations. The trial court also awarded the State a judgment of $313,900 based on the jury's finding that MSC caused groundwater contamination by allowing waste to leak out of the earthen pit on 3,495 occasions. In seven points of error, appellants contend (1) the evidence is insufficient regarding either unauthorized use of the earthen pit or groundwater contamination, (2) liability may not be extended to parties who are not permit holders, (3) cumulative penalties may not exceed the maximum statutory punishment per violation, (4) the State's jury argument was improper, and (5) the trial court erred in excluding evidence supporting appellants' defense of discriminatory enforcement. We reverse and remand.

On August 17, 1977, the Texas Water Quality Board issued an order amending a deep well injection permit held by MSC. The amendment required that

> [a] concrete separator shall be constructed for pretreatment of the waste to replace the existing earthen pit and placed in service within nine months after issuance of the amendment. *The Company shall discontinue use of the earthen pit upon completion of the separator* and close-out the earthen pit as described in the application within 18 months after issuance of this Amendment. (emphasis added)

The Texas Department of Water Resources, predecessor agency of the TWC, twice extended the deadline, but on September 19, 1979, it ordered MSC to cease receiving any waste materials into the

earthen pit and to close the pit within nine months.

A number of current and former MSC employees testified that they continued to pump sludge into the pit, covertly. To conceal the activity from outsiders, they would write code phrases such as "pumping sludge ... *over the levy* " [sic] in their logbooks, and they shut down the pumps whenever inspectors came. When MSC entered into a compliance agreement with the State to close the pit with a tarpoleum, employees cut tears in the fabric so that they could continue to pump waste into the pit.

Jurors disbelieved MSC's claim that the only hazardous waste pumped into the pit was material that had been removed from the pit along with rainwater in an effort to clean the pit. They also rejected MSC's allegation that the State's suit against MSC was solely motivated to benefit a quasi-governmental agency, Gulf Coast Waste Disposal Authority, which was MSC's direct competitor. However, in point of error number four, appellants claim the trial court erred in excluding evidence relevant to their "equal protection" defense of discriminatory enforcement. U.S. CONST. amend. XIV; TEX.CONST. art. I, § 3. Specifically, MSC offered into evidence the State's enforcement log which showed, in part, that (1) six of Gulf Coast's customers and investors were "large" polluters, (2) the State took enforcement action against only four of them, and (3) no penalties were assessed against those four. Sustaining the State's objections that any reference to penalties assessed against other companies was not relevant or its prejudicial effects outweighed its probative value, the trial court admitted the enforcement log only after the penalty amounts were excised. Appellants contend that without "the final piece of the discriminatory enforcement puzzle," jurors were misled: admitting information that enforcement action was taken against Gulf Coast customers and investors but excluding evidence revealing that no penalties were assessed against them resulted in a half-truth told to the jury. We agree.

"Equal protection" essentially ensures that all persons similarly situated be treated alike. *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3253, 87 L.Ed.2d 313 (1985); *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 932 (5th Cir.1988). For example, the United States Supreme Court held long ago that an ordinance forbidding the operation of wooden laundries but enforced only against persons of Chinese descent is synonymous with a law forbidding only Chinese to operate wooden laundries. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Which is not to say that selective prosecution is necessarily the same as applying the law, with improper motive, to only one person or entity.

> A government legitimately could enforce its law against a few persons (even just one) to establish a precedent, ultimately leading to widespread compliance. The prosecutor may conserve resources for more important cases.

*Falls v. Town of Dyer, Ind.*, 875 F.2d 146, 148 (7th Cir.1989). Indeed, a defendant claiming discriminatory enforcement carries a heavy burden. First, he must make "a prima facie showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not." *U.S. v. Rice*, 659 F.2d 524, 526 (5th Cir.1981). Second, he must show that the government's prosecution of him is "selective, invidious, in bad faith or based on impermissible considerations such as race, religion, or his exercise of constitutional rights." *U.S. v. Kahl*, 583 F.2d 1351, 1353 (5th Cir.1978).

It may well be that to establish a precedent to compel compliance the State pursued MSC and not other companies because the case against MSC, with damaging testimony from employees, seemed the most winnable. Or it could be that exceptional enforcement appeared appropriate because of a blatant, intentional violation of conditions the company had agreed upon. But when jurors rejected appellants' defense that the water commission intentionally discriminated against MSC in the enforcement

of its regulations, they did so without benefit of persuasive evidence regarding the true impact of the government's enforcement actions against other companies similarly situated to MSC. The enforcement log as admitted created a misleading impression that influenced the jurors' findings and probably motivated them to assess penalties far out of line with other offenders. The evidence should have been admitted to give the jury a more complete picture by which to judge appellants' defense. Therefore, we sustain appellants' fourth point of error.

Our disposition of the case on this ground makes it unnecessary to consider appellants' other contentions.

The judgment is reversed and the cause remanded.