The STATE of Texas, Petitioner,

v.

MALONE SERVICE COMPANY, Arthur Lee Malone and Larry Malone, Respondents.

No. D–0863.

Supreme Court of Texas.

April 29, 1992.

Rehearing Overruled June 17, 1992.

8. Second Supplement to Intervenor's Motion for Leave to file Motion for Rehearing, p. 3.

Brian E. Berwick, Nancy Olinger, Austin, for petitioner.

Jacalyn D. Scott, Thomas E. Bilek, Houston, Dan Morales, Austin, for respondents.

## OPINION

MAUZY, Justice.

This civil environmental enforcement action presents evidentiary issues relating to the defense of discriminatory enforcement. The trial court excluded evidence of penalties listed within an enforcement log of the Texas Water Commission. The court of appeals reversed and remanded, holding that the evidence should have been admitted. 804 S.W.2d 174. We reverse the judgment of the court of appeals.

Malone Service Company operates a hazardous waste disposal plant in Galveston County. Before 1977, Malone legally used a large unlined earthen pit for the receipt of waste. In August, 1977, however, the Texas Department of Water Resources issued an order amending Malone's waste disposal permit to provide for the installation of a concrete separator system to divide waste into aqueous, organic, and solid phases. The order also stated:

The company shall discontinue use of the earthen pit upon completion of the separator and close-out the earthen pit as described in the application within 18

months after issuance of this Amendment.

Despite continued enforcement efforts by the Department, Malone failed to cease its use of the earthen pit, even after the eighteen-month deadline had been extended. Finally, in early 1983, Malone entered into a Compliance Agreement providing that, so long as Malone closed the earthen pit within one year, statutory enforcement proceedings would be withheld.[1]

The State of Texas, acting upon request of the Texas Water Commission,[2] brought this suit against Malone and others (collectively "Malone") in 1986. *See* Tex.Health & Safety Code § 361.224(b). The State alleged that, despite the 1977 order and the 1983 Compliance Agreement, Malone continued to discharge hazardous waste into the earthen pit in violation of the Texas Solid Waste Disposal Act, Tex.Health & Safety Code § 361.001, and the Texas Injection Well Act, Texas Water Code § 27.-001 et seq. In its defense, Malone asserted a claim of discriminatory enforcement, contending that the State's enforcement action was motivated solely to benefit one of Malone's competitors, the Gulf Coast Waste Disposal Authority (Gulf Coast).[3]

At trial, Malone sought to support its claim of discriminatory enforcement with an enforcement log generated by the Commission's computers. The log, dated October 26, 1988, lists the names of hundreds of companies against which the Commission had some type of enforcement activity under the Solid Waste Disposal Act. Six of those companies, Malone contends, were customers and investors of Gulf Coast, and had been classified by the Commission as large polluters. Malone claims that the log shows the Commission had taken enforcement action against only four of the six

---

1. *See* Texas Water Code § 26.123; Tex.Rev.Civ. Stat.Ann. art. 4477–7 (Vernon Supp.1986), *repealed by* Acts 1989, 71st Leg., ch. 678, § 13(1), eff. Sept. 1, 1989; *now see* Tex.Health & Safety Code § 361.001.

2. The Texas Water Commission is the successor agency to the Texas Department of Water Resources. *See* Texas Water Code Ann. § 5.001, *amended by* Acts 1985, 69th Leg., ch. 795, § 1.001, eff. Sept. 1, 1985.

3. The Gulf Coast Waste Disposal Authority is a political subdivision created by the Texas Legislature in 1969 under Tex. Const. art. 16, § 59. *See* Gulf Coast Waste Disposal Authority Act, ch. 409, 1969 Tex.Gen.Laws 1336. Gulf Coast has the power to develop and effectuate a regional water quality management program in Chambers, Galveston, and Harris counties.

companies, and had assessed no penalties in any of those cases.

The State objected and requested that the log be admitted with certain columns excised; namely, the columns styled "Penalty Assessed," "Penalty Collected," and "Scheduled Compliance." The trial court sustained the objection and admitted the log with the disputed columns removed.

The trial court did not, however, bar all evidence relating to enforcement proceedings against Malone's competitors. The court permitted Malone's counsel to go through the admitted portions of the enforcement log and other documents in order to elicit testimony from two Water Commission employees. This testimony revealed that all six of the companies in question had been subject to enforcement in some manner short of suit. The two employees also testified that the State had shut down none of these six companies, and that no officers or directors of the six companies had been individually fined for violations of State environmental statutes.

On the basis of the evidence presented, the jury found that the Commission had not intentionally discriminated in the enforcement of its regulations against Malone. Passing on the Commission's allegations, the jury found that Malone had continued to use the earthen pit on 418 occasions after September 19, 1979, and that Malone had contaminated ground water by discharging or causing seepage of solid waste from the earthen pit on a total of 3,495 occasions. For each of the instances in which Malone had used the pit, the jury chose to assess the maximum civil penalty of $5,000. *See* Tex.Water Code § 27.101. The trial court rendered judgment on the jury verdict against Malone in the amount of $2,403,900; against Arthur Lee Malone, the company's president, in the amount of $627,000; and against Larry Malone, the company's plant manager, in the amount of $22,000.

On appeal, Malone argued, among other things, that the trial court had erred in excluding the evidence of penalties assessed against Malone's competitors. The court of appeals agreed, reasoning that the excised columns should have been admitted in support of Malone's defense of discriminatory enforcement. 804 S.W.2d at 174.

 The defense of discriminatory enforcement is based on the constitutional guarantee of equal protection under the law. U.S. Const. amend. XIV, § 2; Tex. Const. art. I, § 3; *see generally Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Though the defense originated in the context of criminal prosecutions, the governing principles also apply to civil proceedings involving state agencies. *See Railroad Commission v. Shell Oil Co.*, 139 Tex. 66, 71–76, 161 S.W.2d 1022, 1025–28 (1942); *Colorado River W. Ry. v. Texas & New Orleans R.R. Co.*, 283 S.W.2d 768, 776–77 (Tex.Civ.App.—Austin 1955, writ ref'd n.r.e.).[4]

 To establish a claim of discriminatory enforcement, a defendant must first show that he or she has been singled out for prosecution while others similarly situated and committing the same acts have not. *See United States v. Rice*, 659 F.2d 524, 526 (5th Cir.1981); *Wolf v. State*, 661 S.W.2d 765, 766 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). It is not sufficient, however, to show that the law has been enforced against some and not others. The defendant must also show that the government has purposefully discriminated on the basis of such impermissible considerations as race, religion, or the desire to prevent the exercise of constitutional rights. *See Rice*, 659 F.2d at 526; *Wolf*, 661 S.W.2d at 766; *see also Super-X Drugs of Texas, Inc. v. State*, 505 S.W.2d 333, 336 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ).

 In deciding whether to admit evidence in support of a discriminatory enforcement claim, a trial court must apply

---

**4.** In the criminal context, the defense is generally known as selective prosecution. *See, e.g., Wayte v. U.S.*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *Gawlik v. State*, 608 S.W.2d 671, 673 (Tex.Crim.App.1980). In both the civil and the criminal contexts, though, the same equal protection principles apply. *See generally* Kenneth C. Davis, ADMINISTRATIVE LAW TREATISE § 9:7 (2nd ed. 1979 & 1989 supp.).

the rules of evidence in light of the above requirements.[5] Evidence will generally be relevant to the defense of discriminatory enforcement if it tends to show either that the government has singled the defendant out for prosecution or that the government has acted on the basis of impermissible considerations. *See* Tex.R.Civ.Evid. 401. Even if the evidence is relevant, however, the trial court may exclude it if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. Tex. R.Civ.Evid. 403.

■ In the present case, Malone sought to establish that the State had discriminated by taking strong enforcement action against Malone while taking little or no action against companies associated with the Gulf Coast Waste Disposal Authority. This assertion, if true, would tend to support the allegation that Malone has been singled out for prosecution while others similarly situated and committing the same acts have not. It would not, however, constitute a showing that the government has purposefully discriminated on the basis of impermissible considerations.

■ The complexity of regulatory enforcement requires that a state agency retain broad discretion in carrying out its statutory functions. *See Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).[6] Thus, a discriminatory purpose is never presumed; rather, the party asserting the defense of discrimi-

natory enforcement must show a clear intentional discrimination in enforcement of the statute. *See S.S. Kresge Co. v. State,* 546 S.W.2d 928, 930 (Tex.Civ.App.—Dallas 1977, writ ref'd.n.r.e.); *see also Enntex Oil & Gas Co. v. State,* 560 S.W.2d 494, 497–98 (Tex.App.—Texarkana 1977, no writ); *Super-X Drugs,* 505 S.W.2d at 336. Even when enforcement has been sought for selfish reasons by a private entity, the state's actions are presumptively non-discriminatory; the motives of the private entity are not imputed to the state. *See Retail Merchants Ass'n of Houston, Inc. v. Handy Dan Hardware, Inc.,* 696 S.W.2d 44, 53 (Tex.App.—Houston [1st Dist.] 1985, no writ); *S.S. Kresge Co.,* 546 S.W.2d at 930.

Malone offered no evidence suggesting that benefits to Gulf Coast would flow directly to the State.[7] Nor did Malone offer any evidence suggesting that the State's action against Malone was based on race, religion, or any other impermissible considerations. Thus, as a matter of law, the evidence offered by Malone failed to establish the defense of discriminatory enforcement.

We conclude that the trial court did not abuse its discretion in excluding the penalty amounts in the enforcement log. We reverse the judgment of the court of appeals and remand this cause to that court for consideration of points not yet reached.

Concurring opinion by GONZALEZ, J.

GONZALEZ, Justice, concurring.

I concur in the Court's judgment but write separately to offer some guidelines

---

5. Neither Malone nor the State argues that the trial court erred in submitting the discriminatory enforcement issue to the jury; thus, we do not decide that question. We note, however, that at least some federal courts have assigned the issue to the judge, *see United States v. Berrigan,* 482 F.2d 171, 174–76 (3rd Cir.1973), while at least one Texas court has left the matter to the jury, *see Wolf v. State,* 661 S.W.2d 765, 766 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.).

6. "[A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation

or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing."

7. Under state law, all funds held by Gulf Coast must be placed either in depository banks designated by Gulf Coast's board of directors or in a trustee bank named in a trust indenture. Gulf Coast Waste Disposal Authority Act, ch. 409, § 4.08, 1969 Tex.Gen.Laws 1336, 1350. No funds received by Gulf Coast flow directly to the State.

regarding the use of the defense of selective prosecution in regulatory actions.

There are many external factors over which an agency has no control that influence the outcomes of regulatory decisions. Therefore, it is egregiously inequitable to allow a defendant to force the State of Texas to justify a penalty it seeks in a pending action by explaining the penalties imposed in earlier unrelated cases. Allowing a defendant to employ such a defense without first requiring evidence that the prosecution used impermissible criteria (such as race or religion) would be unprecedented and bad policy.[1]

I am concerned that without this safeguard, future defendants will invoke this defense, regardless of merit, to divert the trier of fact's attention from the real issue of whether the defendant violated an environmental regulation. The State should not have to validate any result reached in prior cases unless a concrete basis exists for doubting the State's good faith in bringing the current enforcement action.

The State Water Commission maintains an "enforcement log" with columns that list the companies that were the subject of the enforcement, the nature of the claimed violation, the penalties assessed, and the penalties collected. Many of the entries showed "0.00" as the amount of penalty assessed or collected. The trial court admitted the log into evidence except for a redaction of the columns for penalties assessed or collected. Nothing in the record shows whether the actions listed in the log were pending or adjudicated matters, or whether penalties were assessed by a jury, judge, or settlement.

"Selective prosecution," a recognized defense to criminal charges, is properly invoked when the prosecution based its action on an impermissible criterion such as race, religion, or the exercise of protected statutory and constitutional rights. *See, e.g., Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). It requires proof of:

(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and

(2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination." * * * Mere "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." [Citations omitted.]

*Gawlik v. State*, 608 S.W.2d 671, 673 (Tex.Crim.App.1980), *quoting United States v. Ojala*, 544 F.2d 940, 943 (8th Cir.1976); *see also Armendariz v. State*, 529 S.W.2d 525, 527 (Tex.Crim.App.1975); *Railroad Comm'n v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022, 1029 (1942) (agency may not discriminate in the enforcement of its regulations).

Without proof of discriminatory intent, the fact that violators have received different penalties is probative of nothing other than the truism that different tribunals (judges or juries) respond differently to similar facts because of factors completely unrelated to the prosecutor's motives. These factors include: (1) the strength or weakness of the facts of the case; (2) the experience, wisdom, and advocacy skills of the lawyers on both sides of the case; and

---

1. It is unfair to require the State to "re-try" the previous cases by having to explain the different facts and circumstances that justify the lesser penalties. For example, in the case now before us, the jury assessed a fine of $5,000 per violation against Malone Service Co., a lesser amount against Arthur Malone, and even a lesser amount against Larry Malone. The judgment rendered in this case was for $2,403,900 against Malone Service Co., $627,000 against Arthur Lee Malone, and a fine of $22,000 against Larry Malone. Presumably, the jury assessed different fines based on their assessment of respective culpability. I believe this evidence should not be admissible in future cases of selective prosecution; for why should the State be required to justify decisions it did not make?

(3) the differences among community values and attitudes. For example, a tribunal may be more strict on a polluter in their back yard while being more tolerant of a polluter in your back yard.

Courts always presume that a prosecution was brought in good faith and in a nondiscriminatory fashion for the purpose of bringing violators to justice. *See, e.g., Gawlik,* 608 S.W.2d at 673; *accord United States v. Falk,* 479 F.2d 616, 620 (7th Cir. 1973) (en banc). And they recognize that prosecutors have broad discretion in choosing which cases to prosecute. If the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file generally rests entirely within his or her discretion. *See, e.g., Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *Callaway v. State,* 818 S.W.2d 816, 838 (Tex.App.—Amarillo 1991, pet. ref'd); *see also Meshell v. State,* 739 S.W.2d 246, 254 (Tex.Crim.App.1987) (part of the exclusive prosecutorial function is exercise of discretion in preparation of cases for trial).

As the Court recognizes, a state agency's need for discretion in regulatory enforcement is even more compelling than that required in a criminal context. *Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). As Associate Justice Scalia has noted, "[e]stablishing environmental requirements is one thing; enforcing them is something else. Perhaps the greatest degree of agency discretion is involved in deciding whether to assess a penalty against a particular polluter...." Antonin Scalia, *Responsibilities of Regulatory Agencies Under Environmental Laws,* 24 HOUSTON L.REV. 97, 105 (1987).

If a defendant has an unfettered right to put into evidence facially differing treatment, then the State would be forced to "re-try" unrelated cases before resolving the instant enforcement action. Moreover, evidence of differing outcomes in unrelated cases, though patently without relevance, could cause incalculable prejudice. The law contemplates as relevant that evidence which is personal to the accused. Comparisons of fines assessed in other cases does not satisfy this standard.

The defendant's arguments here are analogous to a defendant in a criminal case trying to show the relatively light sentences given other persons charged with the same crime. For example, in a capital murder case, the defendant appealed to the Court of Criminal Appeals and complained that it was error for the trial court to exclude the prior convictions of a co-defendant who had testified against him. The court wrote:

> [W]e do not see how the conviction and punishment of a co-defendant could mitigate appellant's culpability in the crime. Each defendant should be judged by his own conduct and participation and by his own circumstances. If evidence of a co-defendant's convictions and punishment were admissible, why not the convictions in all other capital murders and the punishment in those cases? ... The law contemplates evidence personal to the accused, not comparisons with the convictions and punishments of other defendants.

*Evans v. State,* 656 S.W.2d 65, 67 (Tex.Crim.App.1983); *see also Johnson v. State,* 477 So.2d 196, 218 (Miss.1985). Thus, I concur that the evidence in question, which is not alleged to be tied to any impermissible prosecutorial criteria, such as race or religion, is irrelevant as a matter of law.

I recognize that the role of a jury in state civil enforcement actions is distinguishable from a federal criminal prosecution, and that at some point in a civil action it is desirable to have a jury decide issues of fact concerning the defense.[2] I would hold

---

2. In federal court, the question of selective enforcement is not even a jury issue, because it does not go to guilt or innocence, but to the right of the court to conduct the trial, a matter outside the province of the jury. *See United States v. Berrigan,* 482 F.2d 171, 174–76 (3rd Cir.1973). The issue is decided by a pre-trial hearing. *Id.* at 177. But a pretrial hearing may not be necessary if the defendant's motion fails to allege facts sufficient to raise a reasonable doubt as to the prosecutor's purpose. Absent such a showing, the prosecution is presumed to have been brought in good faith and without discrimination. *United States v. Eklund,* 733

that evidence of the enforcement in unrelated cases is inadmissible without first establishing as a predicate a *prima facie* case of selective enforcement. Upon motion of the State, either by a pretrial evidentiary hearing or *voir dire* outside the presence of the jury, the trial court should make a determination whether the defendant will be able to make a *prima facie* showing of selective enforcement for discriminatory reasons.

With this opinion, the focus of the selective prosecution defense will continue to be the motive of the prosecutor or agency that brought the action and nothing else. In the present case, the defendant wanted to show not that the agency failed to enforce the regulations against others, but that other polluters had been assessed insubstantial penalties in previous environmental enforcement actions. The defendant did not offer any evidence that the prosecution brought against him was based on race, religion, or any other impermissible criteria. Thus, I concur with the court's opinion and judgment.

F.2d 1287, 1290–91 (8th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985).