MEMORANDUM OPINION



No. 04-06-00481-CV



CITY OF SAN ANTONIO,


Appellant



v.



TEXAS WASTE SYSTEMS, INC.,


Appellee



From the 166th Judicial District Court, Bexar County, Texas


Trial Court No. 2005-CI-11233


Honorable Michael P. Peden, (1) Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: July 18, 2007


REVERSED AND RENDERED IN PART; REMANDED IN PART 

 The City of San Antonio appeals a take-nothing judgment entered by the trial court in favor
of Texas Waste Systems, Inc. (TWS). The City argues that the evidence presented at the bench trial
was insufficient to support the trial court's finding that the City discriminatorily enforced a permit
ordinance against TWS. We reverse the trial court's judgment, and render judgment against TWS
for damages and attorney's fees and costs.

Background TWS is a trash hauler operating within San Antonio city limits. Section 14-22 of the San
Antonio City Code requires solid waste haulers who transport, collect, or dispose of waste within
the city limits to obtain an annual permit for each truck they operate. The vehicle permit fees range
from $150 for each small truck to $2,250 for each large truck. TWS operated 30 large trucks in 2003
and 32 large trucks in 2004 and 2005. In July 2005, the City sued TWS to collect delinquent permit
fees totaling $211,500 for the years 2003-2005. The City also sought attorney's fees as permitted
by the City Code. TWS's First Amended Original Answer asserted the affirmative defense of
discriminatory enforcement, stating "Plaintiff has selectively enforced the City Code in question
against Defendant while refusing to enforce the Code against other waste disposal companies
operating within the City of San Antonio." 

 David Lopez, Fiscal Operations Manager for the City's Environmental Services Department,
and Melvin Kemp, general manager of TWS, testified at trial. Lopez testified that he met with Kemp
in March 2005 to discuss TWS's delinquent permit fees. A payment arrangement was worked out,
but after the first payment TWS did not make any further payments due to a "cash flow problem." 
Kemp agreed to the total amount due, but thought that the fee was excessive and that the City had
not enforced the ordinance against other waste companies. Lopez eventually referred TWS to the
City Attorney's Office for civil litigation. Lopez acknowledged that although no civil suits had been
filed against any other waste hauler owing delinquent fees, the decision was made to pursue the suit
against TWS because it was the "best use of resources . . . utilizing the time and money that we knew
would be spent on this action." 

 Lopez stated that the City requested landfill records to assess the number of trucks that TWS
brought to the landfills and used those records to prosecute the lawsuit. Lopez admitted that similar
records were not requested from other waste haulers who are permitted to self-report. Lopez
acknowledged that other waste haulers owe delinquent permit fees ranging from $1,500 to $292,500.
The company with the largest outstanding balance had since paid in full. Lopez denied knowing that
TWS is a minority-owned business. Lopez stated that the only reason the City pursued action against
TWS is because of the large amount of money owed by TWS. 

 Kemp testified that TWS is delinquent on its payments to the City for permit fees. Kemp
stated he talked to other waste carriers who had not paid permit fees and felt like he was being
"profiled" by the City. Kemp denied ever agreeing to a payment arrangement with Lopez; he stated
that he knew that TWS owed "it" and would be "glad to make some sort of arrangement for payments
if he could afford it." When asked why he believed the City sued TWS for unpaid permit fees and
not other waste haulers, Kemp answered, "well, I have no idea why they sued us, except for the fact
that we do - - and I admit - - we do owe more money than the rest of them. But I'm the one that
started trying to get this thing rescinded and have a better playing field for every - - all the haulers..." 
Kemp again stated that he felt TWS had been "profiled" by the City because TWS was not the only
hauler that was not paying its permit fees. 

 Kemp authenticated three certificates indicating TWS's status as a minority-owned enterprise,
one of which was a "Minority/Women Business Enterprise Certification" issued by the City's
Economic Development Department. Kemp, who is not a racial minority, stated that he never raised
the issue of TWS's minority-owned business status with Lopez. Further, Kemp was asked, "so, to
your knowledge, that [minority-owned business status] wasn't even a factor in this case, was it?" 
Kemp replied, "at that time, no." 

 At the conclusion of the evidence, the court stated, "well, the only evidence I have is the
amount owed is the amount owed. I mean, you've not given me any number, but I don't suspect that
you disagree that it's owed. The only question is whether it's selective." TWS's counsel agreed. 
During closing arguments, the trial court questioned the City as to why it had sued only TWS. 
Counsel for the City explained that the City Attorney requires damages in the amount of $20,000 or
more to justify the expense of a civil lawsuit. The court then argued with counsel as to why all
violators, regardless of the amount owed, were not sued, stating "what difference does it make what
amount it is? Someone broke the law, you have to enforce it, right? . . . Forget the amount. If they
owe you $1, you have a responsibility to the taxpayers to pursue that person, right?"

 The court then orally rendered judgment for TWS based on its discriminatory enforcement
defense. Amended Findings of Fact and Conclusions of Law were subsequently signed by the trial
court. The trial court found that the City ordinance requires waste haulers to pay the permit fees and
that TWS had not paid the fee for the years 2003, 2004, and 2005. The court found that other haulers
had not paid the fee, and that the City had not sued any other waste haulers who had not paid. 
Further, the court found that TWS was a minority-owned business and that the City was aware of that
status. In it conclusions of law, the court determined that the City selectively enforced the ordinance
by suing only TWS and that TWS was deprived of a constitutional right to equal protection in the
same manner. Finally, the court concluded that the City discriminatorily enforced the ordinance
against TWS. 

 On appeal, the City contends that the evidence is legally and factually insufficient to support
the trial court's finding that the City discriminatorily enforced the permit ordinance by suing TWS. 
The City also requests that judgment be rendered on its claim for attorney's fees and costs. TWS
responds that the evidence supports the trial court's judgment and that the City violated TWS's
constitutional right to equal protection by 1) selectively enforcing its ordinances in a way that
discriminated against TWS as a minority-owned business and 2) singling out TWS for enforcement
as a "class of one." 

Standard of Review The City is challenging the sufficiency of the evidence to support the trial court's findings.
We review the trial court's findings for legal and factual sufficiency of the evidence, using the same
standard applied when reviewing evidence supporting jury findings. Ortiz v. Jones, 917 S.W.2d 770,
772 (Tex. 1996) (per curiam). A legal sufficiency challenge may only be sustained when: (1) the
record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law
or rules of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328,
334 (Tex. 1998). We review the evidence in the light most favorable to the verdict, crediting
favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable
jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). On a factual sufficiency
challenge, we review the entire record to determine whether the evidence supporting the fact finding
is so weak as to render the trial court's finding clearly wrong and manifestly unjust. Potter v. GMP,
L.L.C., 141 S.W.3d 698, 702 (Tex. App.--San Antonio 2004, pet. dism'd). 

 The trial court's conclusions of law are reviewed de novo. BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002). The standard of review is whether the conclusions of
law drawn from the facts are correct. Zieben v. Platt, 786 S.W.2d 797, 802 (Tex. App.--Houston
[14th Dist.] 1990, no writ). We will not reverse the trial court's judgment unless the conclusions of
law are erroneous as a matter of law. Tex. Dep't of Pub. Safety v. Stockton, 53 S.W.3d 421, 423 (Tex.
App.--San Antonio 2001, pet. denied). Analysis

 The defense of discriminatory enforcement is based on the constitutional guarantee of equal
protection under the law. U.S. Const. amend. XIV, § 2; Tex. Const. art. I, § 3; State v. Malone
Serv. Co., 829 S.W.2d 763, 766 (Tex. 1992). To establish a claim of discriminatory enforcement, a
defendant must show: 1) that he has been singled out for prosecution while others similarly situated
and committing the same acts have not, and 2) that the governmental entity has purposefully
discriminated on the basis of such impermissible considerations as race, religion, or the desire to
prevent the exercise of constitutional rights. (2)
 Malone, 829 S.W.2d at 766. "The conscious exercise
of some selectivity in enforcement is not in itself a federal constitutional violation." Allred's Produce
v. U.S. Dep't of Agric., 178 F.3d 743, 748 (5th Cir. 1999) (quoting Oyler v. Boles, 368 U.S. 448, 456
(1962)). A discriminatory purpose is never presumed. Malone, 829 S.W.2d at 767. The party
asserting the defense of discriminatory enforcement must show a clear intentional discrimination in
enforcement of the statute. Id. 

 The findings of fact make clear that the trial court found discriminatory enforcement on the
basis of TWS's minority ownership. In a selective prosecution case based on race, the claimant must
show that similarly situated individuals of a different race were not prosecuted. See United States v.
Armstrong, 517 U.S. 456, 465 (1996). Thus, to prevail on its affirmative defense of discriminatory
enforcement, TWS had to show that non-minority haulers who had not paid their fees were not sued
by the City. TWS, however, failed to introduce any evidence regarding the ownership of the other
haulers, much less that the other haulers were non-minority owned. Similarly, to prevail on its "class
of one" claim, TWS was required to demonstrate that similarly situated waste haulers were not
required to pay their delinquent fees. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)
(successful equal protection claim brought by a "class of one" requires plaintiff to allege that he has
been treated differently from others similarly situated and that there is no rational basis for the
difference in treatment). Again, TWS did not present any evidence of the minority or non-minority
status of the other companies. Without such evidence, we cannot even begin to analyze whether TWS
was treated differently from other similarly situated business owners, or whether there was a rational
basis for the difference in treatment. 

 Furthermore, TWS failed to introduce any direct or circumstantial evidence that the City acted
with discriminatory intent. To the contrary, during closing argument, counsel for TWS stated: "Your
Honor, I'll be quite honest with you. We did not uncover any evidence of invidious motivation on
behalf of the City." Although Kemp testified that he felt the City had "profiled" TWS, Kemp could
not identify any racial bias on the part of the City. In fact, Kemp's use of the term "profiled" appears
to signify that he felt singled out by the City. However, it is not sufficient to show that the law has
been enforced against some and not others. Malone, 829 S.W.2d at 766; Gunnels v. City of
Brownfield, 153 S.W.3d 452, 464 (Tex. App.--Amarillo 2003, pet. denied) ("[t]he mere failure to
prosecute others similarly situated . . . is not sufficient to show selective prosecution violative of equal
protection[;]" rather, "appellant must further establish that her different treatment was invidious");
see also Allen-Burch, Inc. v. Tex. Alcoholic Beverage Comm'n, 104 S.W.3d 345, 353 (Tex.
App.--Dallas 2003, no pet.). Furthermore, Kemp's feeling that TWS was being singled out is not
sufficient to rise to the level of discrimination. See Claymex Brick & Tile, Inc. v. Garza, 216 S.W.3d
33, 37 (Tex. App.--San Antonio 2006, no pet.) ("a party's suspicions or beliefs do not create
evidence of discriminatory animus"). 

 The only circumstantial evidence introduced by TWS to prove racial bias on the part of the
City were the three certificates of minority ownership. However, TWS did not prove that the City
was aware of the existence of these documents. Although Kemp stated that the certificates were
posted in TWS's office, there was no evidence that Lopez ever saw them. Furthermore, all of the
City's dealings with TWS were through its general manager, Kemp, who is not a racial minority. 
Similarly, Kemp testified that he never discussed TWS's minority ownership with Lopez. Again, this
evidence fails to demonstrate that the City acted with discriminatory intent.

 Ultimately, it appears the trial court concluded that TWS was a victim of discriminatory
enforcement solely because it was the only waste hauler sued. Counsel for the City told the trial court
that "in a perfect world" all permit fee violators would be prosecuted, but that the reality of limited
resources does not permit the City to sue every violator. While the trial court appeared concerned at
the suggestion that the City merely pursued action against TWS because it owed the most money,
state agencies must balance a number of factors when deciding not to enforce a statute, including
whether agency resources are best spent on this violation or another, and whether the agency has
enough resources to undertake the action at all. Heckler v. Chaney, 470 U.S. 821, 831 (1985);
Malone, 829 S.W.2d at 767. "An agency generally cannot act against each technical violation of the
statute it is charged with enforcing." Heckler, 470 U.S. at 831; see also Malone, 829 S.W.2d at 767. 

 The evidence was uncontradicted that TWS was delinquent on its payment to the City, and
that TWS owed the most money to the City. There was no evidence that the City discriminated
against TWS on an impermissible basis, such as race, nor was there any evidence that the City was
even aware of TWS's status as a minority-owned business. The fact that Kemp testified that TWS's
status as a minority-owned business was not a factor when the City initiated its lawsuit further
undermines TWS's position, and appears as though TWS attempted to shift the focus from the
undisputed fact that it owed delinquent fees. See Malone, 829 S.W.2d at 768 (Gonzalez, J.,
concurring) (expressing concern that future defendants will invoke the defense of discriminatory
enforcement, regardless of merit, to divert the trier of fact's attention from the real issue of whether
the defendant violated a regulation or statute). Because there is no evidence in the record to support
TWS's discriminatory enforcement defense, the trial court's findings are legally insufficient. TWS
failed to prove its affirmative defense of discriminatory enforcement as a matter of law, and therefore
the City's first issue is sustained. We need not reach the City's complaint regarding factual
sufficiency of the evidence. See Tex. R. App. P. 47.1.

Attorney's Fees

 In its final issue, the City asks us to render judgment on its claim for attorney's fees and costs. 
Because we have concluded that the City was entitled to judgment on its delinquent permit fee claim
against TWS, we must consider whether the City has also established its entitlement to attorney's fees
on that claim. 

 The City Code provides that the City may seek reasonable attorney's fees in prosecuting
permit violations. See San Antonio City Code § 14-27 ("the city may be entitled to its attorney[']s
fee[s] and costs, and may plead entitlement to delinquent permit fees, and interest on the debt and
judgment as may be allowed by law"). At trial, counsel for the City, Pamela Ogelsby, testified that
she charges the reasonable rate of $150 an hour and had spent 15 hours on the case with trial
preparation and hearing time, totaling $2,250. Ogelsby also testified that court costs in the amount
of $450 had been expended. TWS did not cross-examine Ogelsby, even though it had the opportunity
to do so, and contrary evidence was not proffered by TWS. In addition, Ogelsby submitted an
affidavit attesting to her fees in which she asked for an additional $5,000 for an appeal to the court
of appeals and an additional $5,000 for an appeal to the Supreme Court of Texas. Because Ogelsby's
testimony and affidavit were adequate and uncontested proof of her necessary and reasonable
attorney's fees, we sustain the City's third issue and render judgment for the City in the amount of
$2,700 in attorney's fees and costs for trial, $5,000 for appeal to this court, and $5,000 in the event
of an appeal to the supreme court. See Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882
(Tex. 1990) ("where the testimony of an interested witness is not contradicted by any other witness,
or attendant circumstances, and the same is clear, direct and positive, and free from contradiction,
inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of
law"). Additionally, because the City is entitled to pre-judgment and post-judgment interest as
provided by law, we will remand the cause to the trial court for a determination of the amount of pre-judgment and post-judgment interest to which the City may be properly entitled in light of this
judgment.



Conclusion The judgment of the trial court is reversed, and judgment is rendered for the City against TWS
for damages and attorney's fees and costs. The cause is remanded for a determination of pre-judgment and post-judgment interest to which the City may be entitled. 

 Phylis J. Speedlin, Justice



1. The Honorable Michael P. Peden, presiding judge of the 285th Judicial District Court, Bexar County,
Texas, signed the judgment; however, the Honorable Andy Mireles, presiding judge of the 73rd Judicial District
Court, Bexar County, Texas, presided over the bench trial and signed the findings of fact and conclusions of law. 
2. A defendant can also succeed on a discriminatory enforcement claim if he can show that the government's
actions were deliberately based on an "arbitrary classification." Allred's Produce v. U.S. Dep't of Agric., 178 F.3d
743, 748 (5th Cir. 1999).