Reversed and Rendered and Opinion filed January 23rd, 2025



**In The**

# Fifteenth Court of Appeals

---

### NO. 15-24-00001-CV

---

**AUGUSTIN RIVERA, JR., TERESA EREON GILTNER, HAROLD ODOM, BARBARA ELLIS, ANNA M. MCKIM, CYNTHIA EVA HUJAR ORR, C. ALFRED MACKENZIE, DWAINE M. MASSEY, AND CARLOS R. SOLTERO, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE TEXAS BOARD OF LAW EXAMINERS, Appellants**

**V.**

**DEBORAH SONNENSCHEIN, Appellee**

---

**On Appeal from the 345th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-20-007210**

---

## OPINION

The question here is whether an applicant for admission to the Texas Bar, who was not qualified under Texas rules to sit for the bar exam or for admission without it, must nevertheless be allowed to do so because two years earlier the Board granted a waiver to an applicant of a different race who was unqualified for the same reasons.

Because no equal protection claim arises from application of uniform state rules when no evidence raises an inference of discrimination, we grant the Board's plea to the jurisdiction and render judgment dismissing the case.

## BACKGROUND

In 2012, Deborah Sonnenschein earned a J.D. degree from the Northwestern California University School of Law, an unaccredited online law school. After graduation, she sat for and passed the bar exam in California and obtained her law license there. She later passed the bar exam and was licensed in Massachusetts and practiced there for several years. She applied for her third bar license after moving to Texas in 2019.

Sonnenschein initially sought admission to the Texas Bar without sitting for the bar examination, but was denied because her degree is from an unaccredited law school.[1] She then inquired about sitting for the bar exam to gain admission, but was again denied because her degree was earned primarily through online courses.[2] Next, she asked the Board to waive these requirements, citing a "similarly situated applicant" from an "unaccredited correspondence law school" who was admitted without examination in 2017. At a public hearing before a three-member panel of the Board considering her request, Sonnenschein, who is black, and her husband, who is white, appeared and spoke in favor of their similar requests. Later that month, the Board issued a final decision denying her waiver request and followed up by a letter explaining the basis for the Board's decision.

Sonnenschein sued the Board, alleging (among other claims) two ultra vires

---

[1]    *See* TEX. RULES GOVERN. BAR ADM'N R. 13, § 1 (Sept. 8, 2017), *amended eff.* Dec. 1, 2019 (currently renumbered as § 2). We cite the 2017 rules herein, which in some cases have been renumbered but are otherwise substantively unchanged.

[2]    *See id.*, § 5 (currently renumbered as § 6).

2

claims for violating her state constitutional right to equal protection. The Board filed a plea to the jurisdiction asserting immunity, which the district court denied. The Third Court of Appeals reversed and dismissed all her claims with prejudice except for the two equal protection claims, holding them insufficient to establish a waiver of immunity as pleaded but allowing her a chance to amend and supplement her petition.[3] After she did so, the Board again filed a plea to the jurisdiction, which the district court also denied. This appeal followed.[4]

## LEGAL STANDARDS

Under the Supreme Court's Rules Governing Admission to the Bar of Texas ("the Rules"), the Board "is given discretion in the interpretation and application of these Rules" and may waive "specific requirements" of the Rules for "good cause shown to the satisfaction of the Board."[5] But like most agency decisions, that discretion is not absolute. The Board cannot waive requirements in the Rules if "no exceptions are contemplated by the Supreme Court," which wrote them.[6] Nor can the Board decide constitutional questions (the exclusive jurisdiction of courts), and a suit alleging the Board violated a claimant's constitutional rights "is a sufficient ultra vires allegation to survive a plea to the jurisdiction."[7] But because "immunity from suit is not waived if the constitutional claims are facially invalid," we must examine the merits of Sonnenschein's claims to the extent necessary to determine

---

[3] *Rivera v. Sonnenschein*, 2022 WL 1751685, at \*7 (Tex. App.—Austin June 1, 2022, pet. denied).

[4] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (authorizing interlocutory appeal of ruling on plea to the jurisdiction filed by governmental entity).

[5] TEX. RULES GOVERN. BAR ADM'N 20(e).

[6] *Id.*

[7] *Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 201 (Tex. 2024).

whether they are facially invalid.[8]

The Board's plea to the jurisdiction sought dismissal based on sovereign immunity,[9] and offered evidence in support. When a party adduces evidence in connection with a jurisdictional plea, we consider both the pleadings and the evidence to ascertain whether grounds sufficient to raise a fact question on waiver of immunity exist.[10]

Sonnenschein challenges our jurisdiction to hear the Board's objection to jurisdiction, alleging that it raises the same grounds as in the prior appeal and thus is barred as "substantively a motion to reconsider." When a trial court denies a plea to the jurisdiction, a 20-day deadline for filing an interlocutory appeal applies,[11] and cannot be extended by moving to reconsider or filing an amended plea that is substantively the same.[12] But in this case, the Board timely and successfully pursued the first appeal, Sonnenschein was ordered to supplement her response on remand, and the Board timely filed this appeal arguing her supplementary pleadings and evidence are insufficient. We have jurisdiction to consider whether the district court erred a second time on a different record based on different pleadings and evidence.

## ANALYSIS

In her amended petition on remand, Sonnenschein alleged the Board unconstitutionally denied her equal protection of the laws by (1) not allowing her to

---

[8]    *Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d 681, 699 (Tex. 2022) (quoting *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015)).

[9]    As the Board is a state-level governmental entity, it technically enjoys "sovereign immunity" rather than "governmental immunity" although the two are synonymous. *Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 n.4 (Tex. 2014).

[10]    *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 97 (Tex. 2023).

[11]    TEX. R. APP. P. 26.1(b).

[12]    *City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 300 (Tex. 2017).

4

be licensed *without* sitting for the bar exam; and alternatively (2) not allowing her to *sit* for the bar exam. As the Texas Supreme Court recently explained:

> We evaluate alleged violations of the Equal Rights Clauses in three steps. First, we examine whether "equality under the law" has been denied. If it has, then we determine whether equality was denied because of a person's membership in a protected class of sex, race, color, creed, or national origin. If we conclude that equality was denied because of a person's membership in a protected class, the challenged action cannot stand unless it is narrowly tailored to serve a compelling governmental interest.

*State v. Loe*, 692 S.W.3d 215, 237 (Tex. 2024) (citations omitted).

The Board argues that equality under the law *required* the denial of Sonnenschein's waiver request because Sonnenschein had not graduated from an ABA-approved or state-accredited law school (part I below), and her legal education was conducted primarily online rather than in-person (part II). Sonnenschein says these rules are mere pretext, as the Board misinterpreted both rules, and selectively enforced them against her but not against a white male two years earlier (part III). We address each in turn.[13]

## I.    Unaccredited Law School

To be eligible for admission to the Texas bar, applicants generally must have a law degree and pass the Texas Bar Examination (along with other requirements).[14] The law degree generally must be "a J.D. degree or its equivalent from an approved

---

[13]    We reject Sonnenschein's requests for declaratory relief because the Uniform Declaratory Judgment Act does not waive immunity for rules promulgated by Supreme Court. *See Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 200 (Tex. 2024).

[14]    TEX. RULES GOVERN. BAR ADM'N R. 2(a); *see also* TEX. CIV. PRAC. & REM. CODE § 82.036 ("The supreme court shall make such rules and regulations as to admitting attorneys from other jurisdictions to practice law in this state as it shall deem proper and just.").

law school,"[15] which is defined as a law school "approved by the American Bar Association."[16] But attorneys licensed in other states need not sit for the Texas Bar Exam to obtain a Texas license *if* they have been actively practicing law for a requisite number of years, meet all other requirements, and have a J.D. degree from an ABA-approved law school[17] *or* "from an unapproved law school that is accredited in the state where it is located,"[18] defined as one "recognized as being qualified by the competent accrediting agency of a state."[19]

It is undisputed that Sonnenschein's law school was not approved by the ABA. Nor was it "accredited" when she earned her degree;[20] she concedes it was a "registered unaccredited" law school in California. Yet she alleges her unaccredited law school should be treated as an "accredited" law school under the Texas rules because California permitted its graduates to sit for the California bar exam. But the Texas rules define "accredited" as "recognized as being qualified by the competent accrediting agency of a state." That *individual graduates* are qualified to sit for a bar exam is not the same as finding *a law school* qualified for accreditation. *See* CAL. STATE BAR RULE 4.202(B) ("A 'California accredited law school' is a law school that has complied with the Rules on Accreditation of Law Schools and has been accredited by the Committee."). The Texas rules specifically require agency accreditation, not mere "registration" or legal permission to take an out-of-state exam. Because Sonnenschein graduated from a law school that was neither ABA-

---

[15]    *Id*. R. 3(a)(1).

[16]    *Id*. R. 1(a)(4).

[17]    *Id*. R. 13, § 1 (currently renumbered as § 2).

[18]    *Id*. R. 13, § 2(b)(1) (currently renumbered as § 3(b)(1)).

[19]    *Id*. R. 1(a)(1).

[20]    The Board concedes Northwestern California University School of Law became accredited in 2020, but accreditation generally does not apply retroactively to previously awarded degrees. *See id.* R. 13, § 7(b) (currently renumbered as § 8(b)).

approved nor accredited by California's accrediting agency, the Board did not deny her equal protection of the law under this Rule.

## II.    Online learning

The rules governing admission to the Texas Bar do not distinguish between in-person and online learning for graduates of Texas law schools. But Rule 13 governing "Applicants from Other Jurisdictions" does; it contains a blanket exclusion of legal degrees earned primarily online or through distance-learning conducted from schools outside Texas. Section 5 states:

> **§5  No Degree By Correspondence**
>
> A J.D. degree or an equivalent degree completed at a foreign law school that is earned primarily through online courses or other distance-learning mediums does not satisfy the requirements of this Rule.[21]

It is undisputed that Sonnenschein's legal education took place primarily online, and the Board also denied her application on this additional ground. She argues that denial on this basis denied equal protection of the law because the text of this disqualifier applies only to online degrees from *foreign* law schools, not domestic law schools outside Texas. We review this question de novo.[22]

Standing alone, the phrase "earned primarily through online courses" might be read to apply only to foreign equivalent degrees (under the last-antecedent canon), or *both* J.D. degrees and foreign equivalent degrees (under the series-qualifier canon).[23] Since these two canons "generally will" point in different directions, we

---

[21]     *Id*. R. 13, § 5 (currently renumbered as § 6).

[22]     *See Hensley*, 692 S.W.3d at 201 (applying de novo review to ultra vires claim alleging denial of constitutional rights); *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) (applying de novo review on a plea to the jurisdiction involving statutory construction).

[23]     *See U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023).

must "assess the language, structure, and context . . . to determine which principle carries more weight and relevance."[24]

For several reasons, we construe the online disqualifier as applying to all non-Texas degrees, not just foreign ones. *First*, Rule 13 applies to "Applicants from Other Jurisdictions." It contains nine separate sections, some for graduates from law schools in other states, (§§ 1, 2, & 8), some for graduates from common-law jurisdictions (§ 3), and some for graduates from non-common-law jurisdictions (§ 4). The text of section 5 stating that an online degree "does not satisfy the requirements of *this Rule*" thus appears to apply to all of them.

*Second*, the term "J.D. degree" is "the law degree most commonly conferred by an American law school."[25] It is used throughout the Texas Rules *only* with respect to U.S. law schools;[26] foreign degrees are uniformly referred to as an "equivalent."[27] The use of both terms in section 5 indicates the disqualification applies to online programs from both other states and foreign institutions.

*Third*, the structure of Rule 13 supports this conclusion. Section 5 appears immediately after sections governing graduates from law schools in other states (§§ 1-3) and from foreign law schools (§§ 3-4), but it is not directly attached to one or the other. Like other parts of Rule 13 that apply to all applicants from other jurisdictions (e.g., requirements for proof of licensing, substantial engagement in

---

[24]   *Id*. at 387–88. We apply the canons of statutory construction because the Rules have the force of statutes. *See Bd. of Law Exam'rs v. Stevens*, 868 S.W.2d 773, 776 (Tex. 1994).

[25]   *See juris doctor*, BLACK'S LAW DICTIONARY 786 (12th ed. 2024).

[26]   *See* TEX. RULES GOVERN. BAR ADM'N R. 3(a)(1), 13, §§ 1(b), 2(b) (renumbered as §§ 2, 3(b)(1)).

[27]   *Id*. R. 13, §§ 3(a), 4(a) (renumbered as §§ 4(a)(1), 5(a)).

law practice, and good standing in section 9),[28] stating it separately must have been intended to generally apply.

*Fourth*, Sonnenschein does not suggest why the authors of the Rules (the Texas Supreme Court) felt compelled to disqualify online education from foreign schools alone, and not from other states.

Reading the online-disqualifier in context, we agree with the Board that it applies to all law degrees from jurisdictions outside Texas, whether domestic or foreign. The Board did not deny Sonnenschein equal protection of the law under this Rule because her legal degree from an "other jurisdiction" took place primarily online.

## III. Discretion to Grant Waivers

Sonnenschein's primary claim is that even if she was not qualified for admission with or without sitting for the bar exam, she was entitled to a waiver of those requirements because they were disparately enforced based on race, color, and sex. We agree that even if she was not entitled to admission under equal application of the Rules noted above, a valid claim of selective enforcement by granting waivers based on an applicant's protected factors would give rise to an ultra vires claim over which the courts have jurisdiction.[29]

The Board argues that it could not grant the waiver Sonnenschein requested because it has no discretion to waive Rules for which the Supreme Court contemplated no exceptions:

### § 20(e) Organizational and Miscellaneous Powers of the Board

The Board is given discretion in the interpretation and application of

---

[28]    These section numbers are from the 2017 version of the rules.

[29]    *See Hensley,* 692 S.W.3d at 201 (holding adequately alleged violation of constitutional rights sufficient to state ultra vires claim and overcome plea to the jurisdiction).

these Rules. For good cause shown to the satisfaction of the Board, upon written request, waivers of specific requirements described in these Rules may be granted, unless it appears there from that no exceptions are contemplated by the Supreme Court.[30]

Nothing in the Rules expressly prohibits specific exceptions, but several rules do authorize specific exceptions for good cause shown.[31] That might or might not imply that no other exceptions are contemplated. But again, even that prohibition cannot be applied based on suspect classifications that might prove constitutionally infirm.

Sonnenschein's amended petition alleged that the Board unconstitutionally denied her request for a waiver despite previously granting waivers to seven white graduates of unaccredited out-of-state law schools. But she was not "similarly situated" to those applicants, as the record shows all but one of them attended out-of-state *in-person* law schools, not out-of-state online schools that fall within the disqualifier in Rule 13.[32] The Board also introduced evidence of fourteen requests for waivers from out-of-state graduates of online and/or unaccredited law schools since 2004, all but one of which were denied or withdrawn.

Sonnenschein pleaded and the Board conceded that one white male graduate of an unaccredited, online school was granted a waiver in 2017, two years before her waiver was denied. The Board alleged this was simply a mistake. On remand, Sonnenschein presented no evidence suggesting that explanation was a pretext for discrimination, and for several reasons we believe the record does not support such

---

[30]   TEX. RULES GOVERN. BAR ADM'N R. 20.

[31]   *See id*. R. 2(b); 11(f); 13 § 9(c) (renumbered as § 10(c)); 14 §6; 16(c)(7)).

[32]   *See State v. Loe*, 692 S.W.3d 215, 237 (Tex. 2024); *Klumb*, 458 S.W.3d at 13 ("To state a viable equal-protection claim under the Texas Constitution, the Petitioners must show they have been treated differently from others similarly situated").

an inference here.

*First*, the Supreme Court provided that waiver of the Rules' requirements is committed to the Board's discretion rather than our own. "The complexity of regulatory enforcement requires that a state agency retain broad discretion in carrying out its statutory functions." *State v. Malone Serv. Co.*, 829 S.W.2d 763, 767 (Tex. 1992). Thus, "a discriminatory purpose is never presumed; rather, the party asserting the defense of discriminatory enforcement must show a clear intentional discrimination in enforcement of the statute." *Id*. We hesitate to presume from one counterexample that the Board acted unconstitutionally without some evidence to support such an inference.

*Second*, this is not a case where a stated reason was applied only to protected class members, and never to outsiders.[33] The evidence here showed the Board had uniformly denied waivers to graduates of either unaccredited or online law degrees from other jurisdictions, with but one exception. Without something more, that does not raise a reasonable inference that the denial of Sonnenschein's waiver request was based on race, color, or sex.[34]

*Third*, the rules governing legally sufficient evidence require that when circumstantial evidence is meager, and is "equally consistent with either of two facts, neither fact may be inferred."[35] A factfinder would simply have to guess whether granting a waiver to a prior white applicant was a mistake or discriminatory

---

[33]     *See, e.g., Davis v. Fisk Elec. Co*., 268 S.W.3d 508, 523 (Tex. 2008) (holding fact that given reason for preemptory strikes that "also applied to these other panel members, most of them white, none of them struck, is evidence of pretext").

[34]     *See State v. Malone Serv. Co*., 829 S.W.2d 763, 766 (Tex. 1992) ("To establish a claim of discriminatory enforcement, . . . the [claimant] must also show that the government has purposefully discriminated on the basis of such impermissible considerations as race, religion, or the desire to prevent the exercise of constitutional rights.").

[35]     *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005).

enforcement.[36] In such cases, each piece of circumstantial must be viewed "not in isolation, but in light of all the known circumstances."[37]

We hold that Sonnenschein has not carried her burden to show the Board's application of the Rules as written was merely a pretext.

## CONCLUSION

On this record, Sonnenschein has not offered evidence raising a fact question of a valid equal protection claim. We reverse the district court's order and render judgment dismissing the case.

/s/ Scott Brister

Scott Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.

---

[36]     *Id*.

[37]     *Id*. at 813–14.